112 So.2d 15 (1959)
FLORIDA POWER CORPORATION, Appellant,
v.
Ralph WILLIS, Appellee.
No. A-377.
District Court of Appeal of Florida. First District.
May 12, 1959.
Rehearing Denied June 2, 1959.
*16 Osborne, Copp, Markham & Ehrlich, Jacksonville, for appellant.
C.A. Avriett, Jasper, and J.B. Hodges, Lake City, for appellee.
WIGGINGTON, Judge.
This is an appeal from a final judgment awarding plaintiff damages for personal injuries sustained by him as the result of defendant's alleged negligence.
The complaint on which the case was tried alleges that defendant owns and maintains an uninsulated high-tension electric line which traverses farm lands on which plaintiff was engaged in the growing and cultivation of corn and tobacco. It also alleges that defendant negligently permitted its power lines and wires to become in need of repair and to sag, drop, hang down and remain out of place at and across the land which plaintiff was farming. While plaintiff was handling, turning over and around a length of aluminum irrigation pipe incident to his normal farming activities, he received in some unascertained way a violent shock and burn causing serious and permanent injuries. The complaint alleges that these injuries are the direct result of defendant's negligence in failing to properly maintain its transmission lines.
Defendant's motion to dismiss the complaint for failure to allege ultimate facts showing a causal relation between the alleged acts of negligence and plaintiff's injuries was denied. Defendant in its answer denied the material allegations of negligence, or that it had knowledge of any defective or dangerous conditions at the time and place alleged in the complaint. The answer further alleges that plaintiff was guilty of contributory negligence, and that the transmission line was constructed and maintained in accordance with the minimum requirements of the National Electrical Safety Code. The last defense above stated was stricken on plaintiff's motion, and the cause proceeded to trial on the issues made by the complaint and the remaining defenses interposed by the answer. Defendant's motions for directed verdict at the close of plaintiff's evidence and at the conclusion of all the evidence were denied, as was its motion for new trial filed subsequent to entry of judgment.
*17 Appellant attacks the sufficiency of the evidence to sustain the judgment. Plaintiff testified that on the day he was injured he observed the electric line suspended over the area on which he was in the process of connecting thirty-foot lengths of irrigation pipe, and due to the extreme heat of the day the wires were singing and appeared to sag more than usual. Plaintiff was unable to state with any degree of definiteness how high the lowest wire was above the ground on which he was working, and the record is devoid of any evidence tending to establish that at the time and place in question the electric lines were in need of repair. Defendant established that the clearance between the ground and lowest wire was approximately twenty-four feet, whereas the minimum standards of the National Electrical Safety Code by which all such lines are constructed and maintained throughout the country require a clearance of only eighteen feet five inches above the earth in areas devoted to agricultural pursuits. The temperature prevailing at the time plaintiff was injured was proved to be ninety-five degrees, and the testimony of defendant's electrical engineering experts established that the transmission line would sag not more than one foot for every thirty degree change in temperature.
It is the contention of appellant that the foregoing evidence completely refutes the allegations that it was negligent in the maintenance of its transmission line and affirmatively establishes that its line was of sufficient height above the ground to protect those who might be exposed to its dangerous effect.
Our Supreme Court has held that while an electric company is not an insurer against all possible accidents, it is nevertheless under an obligation to do all that human care, vigilance and foresight can reasonably do consistent with the practical operation of its plant to protect those who use its electricity.[1] However, the Court has refused to enlarge that duty to require the establishment of warning signs and guards to protect people who might possibly come in contact with high-tension power lines.[2]
It has been generally recognized that a power company must take into account the type of farming operations carried on in rural areas across which it constructs and maintains high-tension lines. The courts have held that if a company can reasonably foresee that the customary activities incident to farming operations indicate that the size and type of equipment normally used will project above the ground at more than a normal height, then a duty rests upon the electric company to suspend its wires at sufficient height to prevent persons using such equipment from innocently coming into contact with the lines.[3] The fact that an electric company erects its lines at a height which complies with the minimum standards of the National Electrical Safety Code is a factor which may be considered by a jury in determining the issue of negligence, but is not in itself a defense to the action.[4]
The evidence reveals that many farmers engage in the growing and cultivation of corn and tobacco in Hamilton County, and that they customarily irrigate their crops by the use of pipe laid out across the areas in cultivation. The irrigation pipe so used is aluminum of five-inch diameter, and in lengths of twenty, thirty and forty feet. It further appears from the evidence that when the pipe is moved from *18 one location to another the practice is to stand the pipe upright and strike the lower end against the ground to clear out all obstructions that might be present before reassembling it. Whether the electric company should have taken into account the type and use of such equipment, and constructed its lines at a sufficient height above the ground to protect those using such equipment in the customary manner, was properly a question for the jury. We therefore hold that the trial court did not commit error in refusing to direct a verdict for defendant or grant a new trial on this ground of its motions.
Appellant further contends that the evidence fails to establish any causal connection or relation between the alleged act of negligence and the injuries sustained by plaintiff. It urges that such proof is necessary to establish the element of proximate cause if recovery is to be allowed.
There were no eyewitnesses present at the time plaintiff was injured. He testified that prior to his injury he was connecting sections of aluminum irrigation pipe measuring thirty feet nine inches in length preparatory to irrigating his crops. Plaintiff had been assembling and using irrigation pipe on the farm in question for some two years prior to his injury, and was fully familiar with the presence of the high-tension line above him which carried 72,000 volts of current, and knew the danger of coming in contact therewith. The section of pipe that plaintiff was handling was lying on the ground perpendicular to and approximately two or three feet east of a point directly beneath the transmission lines. In checking the pipe to see if it was clear of any obstruction, plaintiff raised the end of the pipe farthest from the transmission line and looked through it. Being unable to get a clear view through the pipe, plaintiff raised it to his shoulder and walked forward toward the transmission line, the easternmost end of the pipe farthest from the transmission line being inclined upward over his shoulder as he walked westward toward the center of the pipe. As plaintiff arrived at approximately midway the length of the pipe, he raised it in the air and took one step forward striking the westerly end into the ground to jar loose any obstruction. At this point the opposite end of the pipe was inclined upward at an angle of about forty-five degrees and away from the electric line. At the moment the lower end of the pipe struck the ground, plaintiff heard a sound like the popping of a bullwhip, and he was immediately thrown to the ground in a paralyzed condition. He testified that while on the ground he received several more shocks before he was able to regain his senses and summon help. The fact that he received serious electric burns and injuries is not disputed.
Plaintiff maintained steadfastly on direct and cross examination that the pipe which he held in his hands never came in direct contact with the transmission line. Had such fact been admitted or established, it is clear under the evidence that plaintiff's contributory negligence would have barred recovery as a matter of law. He stated that as he walked the pipe forward, his eyes were on the line at all times, for he knew that if the pipe came in contact with the line serious consequences would result. He was unable to give any account of how he received the electric shock which he experienced, but in answer to leading questions by his counsel it was intimated that possibly the electric current from the transmission line arced the distance eastward to the upraised end of the irrigation pipe, thereby transmitting an electric current down the pipe through his body and into the ground. Plaintiff admitted, however, that he did not see any bolt of fire or electric arc jump from the transmission line toward the pipe, nor did he see anything that might tend to support such conjecture. In oral argument before this court, plaintiff's counsel frankly admitted that no attempt was made by them to establish that the current arced from the transmission line to the pipe held in plaintiff's hands, nor did they rely upon that theory as a basis for recovery.
*19 On cross-examination plaintiff variously estimated the end of the pipe protruding into the air at the time he received the shock to be no closer than from six to twenty or thirty feet from the transmission line. Three expert electrical engineers who testified for defendant established that a transmission line carrying a current of 72,000 volts could not arc a distance of more than two and one-half or three inches to a metal object such as the pipe in question. The undisputed testimony further established that had the pipe come in contact with the transmission line, or had the current arced from the line to the pipe, it would inevitably bear a mark or scar at the point where it was subject to the current. Although plaintiff introduced in evidence a section of irrigation pipe which he testified was the same pipe he was handling at the time he received his injuries, an examination of this pipe revealed no scar or burn of any kind. The engineers' testimony with respect to the arcing distance of current is corroborated further by evidence that there is installed on each power pole a ground wire that is located a distance of not more than two and one-half feet from the high-tension line itself, and that never in the experience of the company has current arced from the power line to the ground wire. The testimony shows that had this occurred a short circuit would have been immediately recorded on an instrument maintained for that purpose in the company's station.
From the foregoing summary it is apparent that plaintiff offered no proof tending to establish how or in what manner he received the electric shock which injured him. There is no proof from which the jury could have reasonably inferred that there was any causal connection between the power company's negligence in maintaining its transmission line at an unsafe distance above the ground, and the injuries which plaintiff suffered.
It is established in this jurisdiction that before a defendant must respond in damages for a negligent act or omission, evidence must clearly show that a causal relation, such as the law recognizes as being sufficient, exists between the damage complained of and the act alleged to have occasioned the damage. If such a relation does not exist, the damage is said to be remote and cannot be recovered.[5] Negligence is not actionable absent proof of a causal connection between such negligence and the injury for which recovery is sought.[6] It must be proved that the negligence was the proximate cause of the injury.[7]
A personal injury action arising in West Virginia involved a situation similar in principle to the one now under consideration. The plaintiff received in some unascertained way an electrical shock resulting in severe injuries when he walked under a low-hanging high-tension electric line. Plaintiff was unable to prove or give any plausible explanation as to how he received the electrical shock which caused his injuries. He was five feet four inches tall and the electric line was seven feet above the ground. Plaintiff testified positively that he did not reach up and touch the line as he passed beneath it, although his hand and arm were burned worse than any other part of his body. The evidence conclusively established that the line, which carried 88,000 volts of electricity would not arc more than four and one-half inches to a grounded object. In reversing the judgment for plaintiff the court held that it could not be expected to accept as true that which, in the very nature of things, could not have happened. The established physical and scientific facts entirely outweighed and *20 overcame the effect of plaintiffs testimony, and hence it became the duty of the court to set aside the verdict.[8]
It is a sound rule that when physical situations or matters of common knowledge point so certainly to the truth as to leave no room for a contrary determination, based on reason and common sense, such physical situation and reasonable probabilities are not affected by sworn testimony which, in mere words, conflicts therewith.[9]
Our Supreme Court has held in a personal injury action arising out of an automobile collision that the uncorroborated testimony of the plaintiff as to how the collision occurred would not support a verdict in his favor when such testimony was contradicted by unimpeached evidence of physical facts to the contrary.[10]
Appellee relies upon the Clardy case[11] decided by the Supreme Court of Mississippi to sustain the judgment rendered in his favor. He argues in that case the plaintiff received an electric shock "in some unascertained way" and the judgment rendered in plaintiff's favor was affirmed on appeal even though the exact manner or means by which the electric shock was received was not explained. We cannot agree that the facts in that case support appellee's position. The plaintiff there was working on the top of a derrick in close proximity to a high-tension power line. The only unascertained fact was how plaintiff's body came in contact with the line, whether by a swaying of the derrick on which he was working, or by the wind blowing the electric line over and against plaintiff's body. The fact was definitely established without contradiction that the power line came in direct contact with plaintiff's body thereby causing the injuries for which recovery was had. There was no dispute that the electric current entered plaintiff's body upon direct contact with the wire itself, whereas in the case now under consideration there is no evidence tending to show how plaintiff received the electric shock which injured him.
Appellee also cites in support of his position, the recent decision of our Supreme Court in the Clark case.[12] We fail to understand how the rule announced in this case can sustain appellee's position here. In that case there was no dispute but that a high-tension line carrying 72,000 volts of electricity was negligently permitted to fall across a filling station in which plaintiff was ironing clothes. The effect of the power line falling across the building showed that so much electric current was out of control that the pumps were put out of commission; a hole was burned in a bucket sitting nearby; light bulbs were damaged, and a blinding flash occurred which lit the whole filling station with "blue fire", all of which was accompanied by a loud report. The Court reasoned that the jury was justified in finding from the evidence that plaintiff received an electric shock which proximately resulted from the negligent act of the power company in permitting its line to fall across the building in which plaintiff was working. Those facts are clearly distinguishable from the facts in the case now under consideration in which there is a complete absence of evidence tending to prove how, by what means, or under what plausible theory it could be found that electric current from the high-tension line reached or entered plaintiff's body.
*21 For the foregoing reasons we are impelled to hold that plaintiff has failed to establish any causal connection between the alleged negligence of the power company and the injuries from which he suffers. The record being devoid of any evidence establishing proximate cause, the judgment must be and is reversed and the cause remanded for further proceedings consistent with this opinion.
STURGIS, C.J., and CARROLL, DONALD K., J., concur.
NOTES
[1] Escambia Electric Light & Power Company v. Sutherland, 61 Fla. 167, 55 So. 83.
[2] Richmond v. Florida Power & Light Company, Fla. 1952, 58 So.2d 687.
[3] Nevis v. Pacific Gas & Electric Company, Cal. App. 1954, 266 P.2d 213; Fairbairn v. American River Electric Company, 179 Cal. 157, 175 P. 637; Card v. Wenatchee Valley Gas & Electric Company, 77 Wash. 564, 137 P. 1047.
[4] Gladden v. Missouri Public Service Company, Mo. 1955, 277 S.W.2d 510; Tampa Drug Co. v. Wait, Fla. 1958, 103 So.2d 603.
[5] Williams v. Atlantic Coast Line Ry. Co., 56 Fla. 735, 48 So. 209, 24 L.R.A.,N.S., 134.
[6] Harvin v. Kenan, 157 Fla. 603, 26 So.2d 668.
[7] Tampa Electric Company v. Jones, 138 Fla. 746, 748, 190 So. 26.
[8] Owen v. Appalachian Power Co., 1916, 78 W. Va. 596, 89 S.E. 262.
[9] Cincinnati N. & C. Ry. Co. v. Johnson, 281 Ky. 565, 136 S.W.2d 769; Lambert v. Miller's Adm'r, 277 Ky. 64, 125 S.W.2d 1019.
[10] Florida Publishing Co. v. Copeland, Fla. 1956, 89 So.2d 18.
[11] Four-County Electric Power Ass'n v. Clardy, 1954, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191.
[12] Clark v. Choctawhatchee Electric Cooperative Inc., Fla. 1958, 107 So.2d 609.