363 So.2d 834 (1978)
Arleen S. RICE, Personal Representative of the Estate of Brian Rice, Deceased, Appellant,
v.
FLORIDA POWER & LIGHT COMPANY, a Florida Corporation, and University of Miami, a Florida Corporation, Appellees.
No. 77-1676.
District Court of Appeal of Florida, Third District.
October 3, 1978.
Rehearing Denied November 15, 1978.
*836 James B. Denman & Associates, Ft. Lauderdale, for appellant.
Greenberg, Traurig, Hoffman, Lipoff & Quentel, Daniels & Hicks and Sam Daniels, Preddy, Kutner & Hardy, Miami, and Robert J. Bogdanoff, for appellees.
Before PEARSON, BARKDULL and KEHOE, JJ.
KEHOE, Judge.
By this appeal, Arleen Rice, plaintiff below, contends the trial court erred in granting summary final judgments in favor of appellees, University of Miami [U.M.] and Florida Power & Light Company [FPL], two of multiple defendants in a wrongful death action predicated on negligence. We disagree and affirm the judgments of the trial court.
Brian Rice, appellant's decedent, was a twenty-eight year old geology student at the University of Miami who was electrocuted in an accident which occurred on November 22, 1975. He and his friend, Richard Eisenberg, also a student at the university, had decided to fly a model airplane over an open field owned and maintained by the University of Miami, which was frequently used as a general recreation area.
Although the field had large open spaces away from power lines, the two men took the plane and its accouterments to a place in the field just north of three uninsulated power lines which traversed the field overhead, and set about preparing the model for flight. Mr. Eisenberg's girlfriend, Rebecca Columbus, accompanied by Rice's three year old son, arrived shortly after Rice and Eisenberg. The two men worked for about an hour at their pre-flight preparations. Then, while Eisenberg held the plane, Rice worked the controls, and activated the model. It was controlled from the ground by two fifty foot metal wires which ran from a control handle to one wing. The plane took off and flew less than half a circle before hitting the power lines. Rice dropped to the ground and died.
When the accident occurred, both Mr. Eisenberg and Ms. Columbus were present. Their deposition testimony indicated that the day was clear and sunny and that, while neither noticed the overhead power lines prior to the accident, the wires were clearly visible once one looked up a them. Appellant, however, contends there existed an illusory special perception of the overhead wires as they related to lines running along the edge of the field. Prior to the flight, neither Mr. Eisenberg nor the deceased looked up to see whether or not there were any overhead power lines.
The three lines which traversed the filed were a 120 volt multiple street light conductor, a neutral wire, and a 7,620 volt primary conductor. At the place where the accident occurred, these lines were, respectively, *837 18 + feet, 20 + feet, and 27 + feet above ground. The elevation of the primary conductor was nearly twice the 15 foot clearance requirement specified in the National Electrical Safety Code, the industry "Bible." Yellow paint from the plane was found on the 7,620 volt line, and a portion of the plane's metal control wire had burned off near the wing.
The deposition of Mr. Eisenberg indicates that the control handle which Brian Rice had assembled and was holding had a warning sticker on it which read:
"Danger of electrocution. Do not fly model airplane near electrical power lines."
Brian Rice knew of the potential dangers of electricity, was an "A" student, and had worked part time flying into hurricanes to record meteorological data.
In 1976, Rice's widow filed suit pursuant to the Florida Wrongful Death Act against the University of Miami, the Florida Power and Light Company, and other defendants not affected by this appeal.[1] In 1977, after a hearing on U.M. and FPL's separate motions, the trial court executed two orders granting summary final judgment in favor of both appellees. These orders are the subject of this appeal.
We deal first with the judgment in favor of FPL. It is fundamental that unless the defendant was able to show that, as a matter of law, there was no negligence on its part, or that decedent's negligence was the sole proximate cause of the injury, summary judgment would be inappropriate. Wills v. Sears, Roebuck & Company, 351 So.2d 29 (Fla. 1977); Fla.R.Civ.P. 1.510(c). We direct our attention to the first proposition: Was FPL able to show conclusively that it breached no duty owed to decedent?
The power lines were installed initially in 1955 under permits and franchises granted by the city of Coral Gables, and were located in an easement granted to FPL. Uncontradicted evidence shows that the lines were placed in accordance with acceptable engineering practice to serve the existing and anticipated needs of the community.
Appellant contends that a change in the use of the underlying property from the time the lines were installed to the time of the accident, from one of expanding residential growth to one serving primarily recreational purposes, coupled with a change in the service provided by the uninsulated distribution wires, created genuine issues of material fact as to whether FPL should have re-located the lines, insulated them, elevated them still higher, or warned users of hazards.[2]
The field has been used in recent years for general recreational purposes by students of the university and nearby residents. Affidavits in opposition to defendants' motions for summary judgment indicate that a model airplane attached to a hand control instrument has been flown over the field at least once prior to the accident, but nothing in the record shows that FPL had any actual notice of that fact. (Indeed, the accident appears to be the first in FPL's history in which an injury resulted from flying a model airplane into a power *838 line.) Affidavits also indicate that kites, and model planes, with or without hand controls, had been flown over the field. Again, there is no indication that FPL had notice of this.
An electric company "is under an obligation to do all that human care, vigilance and foresight can reasonably do, consistent with the practical operation of its plant, to protect those who use its electricity," but it is not an insurer against all possible accidents. Escambia County Electric Light & Power Co. v. Sutherland, 61 Fla. 167, 55 So. 83, 91 (1911). Accord, Florida Power Corporation v. Willis, 112 So.2d 15 (Fla. 1st DCA 1959).
As noted by the Supreme Court of Florida long ago:
"[E]ven where the highest degree of care is demanded,... the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight... . `[I]f men went about to guard themselves against every risk... which might ... be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things.'"
Stark v. Holtzclaw, 90 Fla. 207, 105 So. 330, 332 (1925).
The fact that the high voltage lines exceeded the clearance specifications of the National Electrical Safety Code is not conclusive of the absence of negligence. Florida Power Corporation v. Willis, supra. But the mere maintenance of uninsulated overhead power lines above land which the power company has the right to use is not, in itself, a negligent act. Reardon v. Florida West Coast Power Corp., 97 Fla. 314, 120 So. 842 (1929). A manufacture of electricity is neither required to insulate wires wherever they are strung nor to maintain useless warning signs, Richmond v. Florida Power & Light Company, 58 So.2d 687 (Fla. 1952), for the propriety of the use of exposed wires depends on their location. Hardware Mutual Casualty Company v. Tampa Electric Company, 60 So.2d 179 (Fla. 1952).
Therefore the key to a determination of whether the trial court was correct in rendering summary judgment in favor of FPL is whether or not it would be reasonable to conclude that the changed use of the land underlying the uninsulated, but clearly visible, power lines, was such a circumstances as would impose upon the utility company a continuing duty to foresee and protect against the type of injury herein at issue, in the absence of actual notice.
Prior decisions in the area are not necessarily dispositive of the issue for numerous reasons, foremost of which is that none deal with an unanticipated change in property use of which the defendant company had no notice.
A review of Florida cases in which potential liability of a supplier of electricity for negligence has been supported reveals that they have often involved circumstances in which the defendant knew or should have known, at the time the lines were installed, of a foreseeable danger, e.g. Stark v. Holtzclaw, supra; Hardware Mutual Casualty Company v. Tampa Electric Company, supra; Simon v. Tampa Electric Company, 202 So.2d 209 (Fla.2d DCA 1967), or situations in which the defendant power company had superior knowledge of a hazard, e.g. Ahearn v. Florida Power & Light Company, 129 So.2d 457 (Fla.2d DCA 1961). Neither of these factors adhere in the instant case.
The cases in which a preemptive procedure absolving an electric company from liability for negligence was upheld were decided prior to the adoption of comparative negligence in Florida, when contributory negligence was a bar to recovery. E.g. Reardon v. Florida West Coast Power Corp., supra; Richmond v. Florida Power & Light Company, supra; Dudding v. Florida Keys Electric Co-operative Association, Inc., *839 105 So.2d 597 (Fla.3d DCA 1958). However, the rationale applicable to the standard of care required of a supplier of electricity has not changed: if no reasonable duty was abrogated, as a matter of law, no negligence could be found.
The case most nearly on point is Richmond v. Florida Power & Light Company, supra, which upheld a summary judgment in favor of the power company. In that case, plaintiff was flying a radio transmitter consisting partly of a box kite attached to a copper wire, in a residential area, and was injured when the kite wire contacted the overhead line. While the facts are distinguishable, and the case was decided prior to the adoption of comparative negligence, the rationale of the decision remains pertinent. The court stated:
"The inherent danger of electrically energized wires is well known to all except those of tenderest age, but ... the need for successful distribution of so necessary a commodity cannot be defeated by requiring that every conceivable protection be afforded wherever wires carrying it may go, so that anyone who chances to come near may be saved from injury in anything he decides to do, however unpredictable."
58 So.2d 687, 688.
With this admonition in mind, we conclude that, as a matter of law, it would be beyond the bounds of reason to require FPL to foresee an occurrence such as that presented by the instant case. Had a clear view of the exposed lines not existed, or had FPL had actual notice that individuals were flying model airplanes attached to electrical conductors, the changed use of the underlying property might have been sufficiently persuasive to leave the questions of the existence of a duty and a breach of that duty for the resolution of a jury.
While endorsing the high degree of care to which a power company is held, we decline to impose a continuing duty to protect against any and all activity, however unlikely, occurring in the vicinity of lines which were initially located and installed in a reasonable manner. We hold that FPL's maintenance of its wires in the place and under the conditions described herein did not fall beneath the level of prudent foresight required of a supplier of electricity. Therefore, as a matter of law, appellee breached no duty owed the decedent. It follows that FPL was not negligent, and the trial court correctly rendered summary final judgment in its favor.[3]
We turn our attention to appellant's claim that the trial court erred in granting summary final judgment in favor of U.M. Appellant urges that genuine issues of material fact remain unresolved because the university allowed a latent hazard to persist.
We have stated that the existence of unobstructed power lines, clearly visible above an open field is not a latent hazard. See footnote 2, supra. The duty of a landowner to an invitee is to use ordinary care to maintain the premises in a reasonably safe condition for use in a manner consistent with the invitation, and to warn of latent perils which are known or should be known to the owner but which are not known to the invitee or which, by the exercise of due care, could not be known to him. Hickory House v. Brown, 77 So.2d 249 (Fla. 1955); Messner v. Webb's City, 62 So.2d 66 (Fla. 1952); Hall v. Holland, 47 So.2d 889 (Fla. 1950); Quinnelly v. Southern Maid Syrup Company, 164 So.2d 240 (Fla.2d DCA 1964).
An "owner is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own sense, and is not required to give the invitee notice or warning of an obvious danger." Hall v. Holland, supra, at 891-92. Messner v. Webb's City, supra. Nor need he alter the premises to eliminate known and obvious dangers. Hall v. Holland, supra, at 892.
*840 Where an obviously dangerous condition exists, an underlying requirement to liability of a landowner is that he have knowledge of that condition which is superior to that reasonably obtainable by the invitee. Rist v. Florida Power & Light Company, 254 So.2d 540 (Fla. 1971); Somers v. Meyers, 171 So.2d 598 (Fla. 1st DCA 1965); Quinnelly v. Southern Maid Syrup Company, supra. Such is not the case on the facts before us.
Therefore we affirm the decision of the trial court rendering summary judgment in favor of U.M. Rist v. Florida Power & Light Company, supra; Simon v. Tampa Electric Company, supra; Somers v. Meyers, supra; Quinelly v. Southern Maid Syrup Company, supra.
Affirmed.
NOTES
[1] This court recently decided a related appeal, Rice v. Walker, 359 So.2d 891 (Fla.3d DCA 1978).
[2] Appellant also contends that genuine issues of material fact remain unresolved as to whether FPL was negligent in placing the lines originally, and in creating and maintaining a latent, hazardous condition which was foreseeable. We deem these contentions to be without merit; the former because, as noted above, uncontradicted evidence indicates that the original placement of the lines was in conformity with acceptable engineering procedures, and the latter because the record refutes the argument behind the assertion.

This argument is that a special lack of perception as to the distance and location of the lines creates a latent hazard. The record shows that the lines at issue traversed the width of the field and the view of them was totally unobstructed. Although the poles to which the wires were attached were partially obscured by shrubbery, and there were other wires along the perimeter of the field, no impediment to clear view lay between the distribution wires and anyone standing in the vicinity beneath them. Accordingly, we perceive no latent hazard. FPL cannot be charged with negligence on this issue.
[3] Our disposition of this issue renders it unnecessary to inquire into whether or not decedent's negligence was the sole proximate cause of his death.