ROTHENBERG, J.
(dissenting).
Cesar Fabregas (“Fabregas”) was hired by Armando Filter Cleaning Services, a filter cleaning service that contracted with Sunset Bakery to clean an exhaust hood located over a stove and deep fryer filled with oil in Sunset Bakery’s kitchen. While performing this service, Fabregas fell into the deep fryer and was burned by hot oil. Because: (1) Fabregas was an employee of an independent contractor; (2) Sunset Bakery did not participate in, directly influence, or exercise control over the services Fabregas performed; (3) hot oil in a deep fryer under the exhaust hood in the kitchen which was still open for business was an open and obvious danger; and (4) Fabregas failed to use ordinary caution and created the dangerous condition that was the proximate cause of his injury, the trial court correctly granted summary judgment in favor of Sunset Bakery. I therefore respectfully dissent from the majority opinion reversing the trial court’s order.
Because some of the important facts have been omitted from the majority opinion, a more complete recitation of the facts follows. For the past five years, the owners of Sunset Bakery, Diane Fernandez and her husband (“Mr. and Mrs. Fernandez”), contracted with and relied on Frank Filter Service to clean the oil from the vents and hood located over the stove and deep fryer of the bakery three to four times a year.[1] On this particular occasion, because the owner of Frank Filter Service was out of the country, Sunset Bakery hired Armando Filter Cleaning Services, Inc. (“Armando, Inc.”) which had never done any work on the premises. The sole employees of Armando, Inc. were Armando Garcia, Sr. (“Armando Sr.”) and his son, Armando Garcia, Jr. (“Armando Jr.”). On the date of the incident, however, Armando Sr. hired Fabregas to assist them with the Sunset Bakery cleaning job.
It is undisputed that when Armando, Inc. arrived between 2:30 and 3:00 p.m. to clean the exhaust hood and vents located over the stove and deep fryer, the bakery *4 was open for business, the kitchen was in use, the stove was still being used, the deep fryer had been turned off for at least forty-five minutes, and the oil in the deep fryer was still hot. While the evidence is in dispute as to whether Mrs. Fernandez advised Armando Sr. that the oil in the deep fryer was still hot, it is undisputed that she did not instruct the company or its employees on how to clean the exhaust hood and vents, did not monitor their work, and was not in the kitchen while they performed their services.
Unbeknownst to Mr. and Mrs. Fernandez, Fabregas, Armando, Inc.’s employee, removed items from the stove, placed plywood on the stove, broiler, and deep fryer, covered the boards with nylon, climbed up onto the boards, and began scraping the exhaust hood. While Fabregas was scraping the filter, the plywood slipped and he fell into the deep fryer and burned his feet. While it was Armando, Inc.’s general practice to clean exhaust hoods and filters in this fashion, none of the cleaning companies that had serviced the bakery for over sixteen years had ever climbed up on top of the stove, deep fryer, or kitchen equipment to clean the exhaust hood and filters. All of the other companies would cover the equipment with plastic and boards and stand on ladders, not the appliances, to perform their cleaning service.
The gravamen of Fabregas’ complaint against Sunset Bakery is that the bakery had a duty to either turn the deep fryer off earlier to allow the oil to fully cool, or to warn Armando, Inc. and its employees that the oil was hot. Fabregas argues that the trial court erred in granting Sunset Bakery’s motion for summary judgment because there exists a material issue in dispute — whether Mrs. Fernandez warned Armando, Inc. that the oil in the deep fryer was still hot. The majority apparently concludes that Sunset Bakery had a duty to warn Armando, Inc. that the oil was hot, and therefore, whether Mrs. Fernandez warned Armando Sr. is a material issue precluding summary judgment. For the reasons that follow, I respectfully disagree.

Legal Analysis

As a general rule, one who hires an independent contractor is not liable for injuries sustained by that contractor’s employees in performing their work. Fla. Publ’g Co. v. Lourcey, 141 Fla. 767, 193 So. 847, 847-48 (1940); Armenteros v. Baptist Hosp. of Miami, Inc., 714 So.2d 518, 520-21 (Fla. 3d DCA 1998). However, an owner may be held liable for damages suffered by an employee of an independent contractor if: (1) he actually participates in, directly influences, or exercises direct control over the project or the work (but not if he is a passive nonparticipant); or (2) he negligently creates or negligently approves the dangerous condition. Conklin v. Cohen, 287 So.2d 56, 60 (Fla.1973). Additionally, where a known or potential danger exists on the premises, the owner has a duty to warn an independent contractor who is performing work at the premises. Holsworth v. Fla. Power & Light Co., 700 So.2d 705, 708 (Fla. 4th DCA 1997). However, that duty only extends to latent defects or latent dangers. Id. “A latent defect is one ‘not apparent by use of one’s ordinary senses from a casual observation of the premises, or ‘hidden from the knowledge as well as from the sight and ... not discoverable by the exercise of reasonable care.’” Id. (citations omitted).
Based on these legal principles, Sunset Bakery is not liable for Fabregas’ injuries. First, it is undisputed that Sunset Bakery and its employees did not participate in, influence, supervise, or exercise direct control over the work they hired Armando, Inc. to do, and in fact, were not present when Fabregas placed plywood on top of *5 the stove, broiler, and deep fryer and stood on the plywood to clean the exhaust hood and filters. Second, it was Fabregas, not Sunset Bakery, who created the dangerous condition by standing on plywood he had placed on top of a stove and a deep fryer full of oil to clean the exhaust hood above these appliances rather than using a ladder. Thus, it was Fabregas’ own negligence that was the proximate cause of his damages. His fall was the result of the manner in which he chose to perform his duties, which could have caused him to hit his head on any number of objects in the kitchen, break a leg or arm, or burn himself on the recently used stove or oil in the deep fryer. And lastly, Sunset Bakery had no duty to warn because the dangerous conditions that existed in the kitchen were apparent by the use of one’s ordinary senses, casual observation, and the exercise of reasonable care.
In Florida Power & Light Co. v. Price, 170 So.2d 293, 298 (Fla.1964), the Florida Supreme Court noted that an “independent contractor is usually placed in charge of the work site and is responsible for all incidental contingencies and is aware or presumed to be aware of the usual hazards incident to the performance of his contract.” Likewise, this Court in Roberts v. Dacra Design Associates, Ltd., 766 So.2d 1184, 1185 (Fla. 3d DCA 2000), held that a repairman at a construction site who fell on a piece of pipe lying on the floor could not recover for his injuries because he should have anticipated that construction materials may have been present and a reasonable inspection would have revealed the potential hazards.
The following are several more examples where this Court found no liability for injuries where the danger was inherent in the job, open and apparent, or which could have been discovered by a reasonable inspection. In Lonis v. Flagler Federal Savings & Loan Ass’n, 164 So.2d 41, 43 (Fla. 3d DCA 1964), a construction worker suffered permanent hearing loss while working near a loudspeaker located on the roof of the building. The trial court directed a verdict in favor of the defendant. Id. at 42. On appeal, this Court affirmed, finding that the defendant could not be held liable for the injury suffered by the plaintiff since it would be unreasonable to require the defendant to anticipate that a person working on the roof and knowing the presence of the speaker, would place himself in such close proximity that sound emitting from the speaker would damage his ear. Id. at 43. This Court concluded that “[wjhere a reasonable man should expect and anticipate the potential hazard, the plaintiffs duty is at least as great as that of the land owner,” and quoted the following passage taken from Quinnelly v. Southern Maid Syrup Co., 164 So.2d 240, 242-43 (Fla. 2d DCA 1964):
There [was] no superior knowledge of danger on the defendant’s part existing in this case.... It was not the duty of the land owner to furnish the plaintiff a safe place to work, but to use due care in maintaining his premises. Notice or warning is not required where the dangerous condition is open and obvious to a person who is exercising reasonable care for his own safety.
In addressing the duty to warn in Kagan v. Eisenstadt, 98 So.2d 370, 372 (Fla. 3d DCA 1957), this Court affirmed the trial court’s order granting summary judgment in favor of the defendant, Eisenstadt. Kagan, an experienced lumber salesman, was injured when, as he passed an open stairwell of an apartment building under construction to count the number of rafters and ceiling joists needed to complete the job, his foot got caught in a hole, he lost his balance, and he fell through the stairwell. Id. at 371. In affirming the *6 order granting summary judgment, this Court noted that, although it is incumbent upon those in control of the premises
to warn [invitees] of latent dangers, i.e., those which are not apparent from a casual observation of the premises!,] [t]he Supreme Court of Florida has continually adhered to the proposition that requires a person to see what is there to be seen by the ordinary use of his senses, and if it is there to be seen, it is deemed, in law, to have been seen.
Id. Thus, we agreed with the trial court that Eisenstadt had no duty to warn. Id. at 372.
This Court also found no duty to warn in Rice v. Florida Power & Light Co., 363 So.2d 834 (Fla. 3d DCA 1978). As in the previously mentioned cases, we held that the duty owed by a landowner to an invitee is to maintain the premises in a reasonably safe condition and to warn of latent perils which the invitee could not discover by the exercise of due care. Id. at 839. Further, we found that:
An “owner is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses, and is not required to give the invitee notice or warning of an obvious danger. Nor need he alter the premises to eliminate known and obvious dangers.”
Id. at 839 (quoting Hall v. Holland, 47 So.2d 889, 891-92 (Fla.1950) (citations omitted)).
As these cases clearly demonstrate, Sunset Bakery had no duty to warn Armando, Inc. and its employee, Fabregas, that the oil in the deep fryer, which was located beneath the exhaust hood and filters they were hired to clean, was still hot. When Armando, Inc. arrived between 2:30 and 3:00 p.m., the bakery, which was open until 7:00 p.m., was in full operation — the kitchen was in use, as was the stove, which was also located under the exhaust hood. The undisputed evidence was that, after Armando, Inc. entered the kitchen to clean the exhaust hood, an employee of Sunset Bakery turned off the stove and Fabregas removed items from the top of the stove. Fabregas therefore was clearly put on notice that the stove, broiler, and deep fryer could have been hot. It is also undisputed that the deep fryer had no lid and thus, with minimal effort, Fabregas could have determined that the oil was still hot. Upon determining that the oil was hot, Fabregas could have moved the deep fryer to another area of the kitchen because it was on wheels and the undisputed evidence was that it could have been easily moved. But, rather than exercising reasonable caution and due diligence, Fabre-gas either failed to determine whether any of these appliances posed a danger, or simply ignored the danger.
I would conclude that hot oil in a deep fryer located directly below an exhaust hood is a “usual hazard[ ] incident to the performance of the contract,” Price, 170 So.2d at 298, and Fabregas should have anticipated that the oil may have been hot when the bakery was clearly open for business and the kitchen was in use when he arrived. See Roberts, 766 So.2d at 1185. That the oil may have been hot was an inherent danger of the job, which was apparent or which could have been discovered by a reasonable inspection. See Lonis, 164 So.2d at 43. Because the danger was open and obvious to a person exercising reasonable care for his own safety, Fabre-gas had a duty to check it and Sunset Bakery had no duty to warn. Rice, 363 So.2d at 839; Quimielly, 164 So.2d at 242-43; Kagan, 98 So.2d at 371-72. The peril was not latent. The deep fryer was directly below the exhaust hood, it contained no lid or covering, and the fryer was full of oil. Sunset Bakery was “ ‘entitled to as *7 sume that [Fabregas] [would] perceive that which would be obvious to him upon the ordinary use of his own senses, and [was] not required to give [him] notice or warning of an obvious danger. Nor need [Sunset Bakery] alter the premises to eliminate known and obvious dangers.’” Rice, 36B So.2d at 839 (quoting Hall, 47 So.2d at 891-92 (citations omitted)).
Even the plaintiffs own expert, David Talty, testified (in deposition) that the most dangerous piece of equipment in any kitchen is the deep fryer, and he admitted that it was common sense to check the deep fryer to make sure it was not hot before placing a board on top of it. “Yes, a reasonable person — it would be expected that any reasonable person that was working around oil that was being heated for cooking would check to see if whether or not it was still hot.” Mr. Talty also testified that stoves (and deep fryers) are not made to be stood on, and placing unsecured boards on top of a bakery stove and standing on the wood was not a smart way to clean the overhead exhaust hood and filters. He also agreed that a reasonable person would determine whether the oil in the deep fryer was hot, and because this deep fryer was on wheels, it could have been relocated during the cleaning process. Thus, by the plaintiffs expert’s own admissions, hot oil in a deep fryer in a kitchen is a “usual hazard[ ] incident to the performance of the contract.” Price, 170 So.2d at 298. It was an open and obvious danger, and one that a reasonable person should have perceived and have taken reasonable steps to neutralize if exercising reasonable care for his own safety. Thus, Sunset Bakery had no duty to warn.
In addition to the obvious danger and Fabregas’ duty to make a reasonable inspection of an open peril inherent to the job, is the fact that rather than covering the appliances and then using a ladder to reach the exhaust hood and filters as the prior cleaning services had done, Fabregas covered the appliances with plywood and then stood on top of the plywood to perform his services. Sunset Bakery certainly had no reason to anticipate that Fabre-gas would attempt to balance himself on top of its appliances to clean the hood, and in doing so, to not even perform a cursory examination of the very same appliances he intended to stand on to determine if they were hot or posed a danger. The deep fryer was on wheels. Surely, a reasonable inspection and the exercise of reasonable caution would have suggested that the fryer should have been moved rather than using it as a pedestal to reach the exhaust hood.
I therefore would find that the trial court correctly granted summary judgment in favor of Sunset Bakery, and respectfully dissent from the majority opinion finding otherwise.

. Sunset Bakery has been in operation for approximately thirty-two years. Prior to their business relationship with Frank Filter Service, Mr. and Mrs. Fernandez relied on the services of Ross Filter.