HUGHES, et al. *v.* MISSISSIPPI POWER COMPANY

No. 42335          May 14, 1962          141 So. 2d 539

*Morse and Morse,* Gulfport, for appellants.

*Eaton, Cottrell, Galloway and Lang,* Gulfport, for appellee.

McElroy, J.

This is an appeal from the Circuit Court of Harrison County, Mississippi, directing a judgment in behalf of the appellee and rendering judgment. The appellee filed a counterclaim which was likewise dismissed by the

trial court. No appeal has been taken in reference to the counterclaim.

The appellants, Mrs. M. C. Hughes, Sr., and others, allege that Maple C. Hughes, Jr., the son of Mr. and Mrs. Maple C. Hughes, Sr., was piloting a twin-engine aircraft owned by his father and mother on a flight from Texas to Gulfport; that he was unable to land at Gulfport, Mississippi, because he was unable to raise the tower at the Gulfport Airport by radio; that he then proceeded eastward to Biloxi and from there to a point north and east of Biloxi, Mississippi; that he made an approach to what appeared to be a landing strip approximately 3,000 feet long, and that in attempting to land he struck a power line owned and maintained by the appellee across this paved strip; that the strip was designated for what is known as "drag races", being a strip upon which automobiles are raced and that the power line of the appellee had previously been struck by another aircraft attempting to land on said strip. After young Hughes struck the power line, he lost control of the aircraft and it crashed and was substantially destroyed. The suit is for $35,000, the alleged value of the aircraft. The negligence alleged against the appellee is the failure or refusal to remove the power line after the appellee is alleged to have had knowledge that an aircraft previously had struck the power line while attempting to land on the drag strip.

The appellee denied that it was guilty of any negligence; denied that the appellant made a customary approach to the landing strip; admitted that it did own, operate and maintain an electric power line across the paved strip upon which the appellant was negligently and unlawfully attempting to land his aircraft; that the appellee had constructed its power line on a right of way owned by the appellee for a period long in excess of ten years prior to the construction of the drag strip; that the drag strip was constructed underneath the then-

existing power line of the appellee and across its right of way and that the drag strip was in no sense a landing field for aircraft. The appellee also denied that it was under any legal obligation to remove its power lines from across the drag strip until or unless it had been tendered the cost of such work. The appellee further alleged that the drag strip was not a public or private landing strip and that it has never been approved by the Federal Aviation Agency as a landing strip, and that the appellee was under no obligation to take any action with reference to its power lines underneath which this drag strip for auto racing had been constructed without its knowledge and consent across its right of way; and that its power line was constructed, operated and maintained in a lawful and prudent manner and in conformity with the rules and regulations of the Public Service Commission of the State of Mississippi.

Young Hughes testified that he was flying the aircraft from Shreveport, Louisiana, to Biloxi; that when he got to the Natchez area he diverted from his planned course in order to avoid some thunderstorms; that he flew over the Gulfport airport and went on to Biloxi and at the time he attempted to land, visibility was about twelve miles; that he came by the drag strip and made a left turn one time of 180 degrees and then brought the aircraft in, attempting to land on the drag strip; that in attempting to land on the drag strip, the aircraft struck the power line and that he lost control of the aircraft and it crashed. He stated that he held a student's license; that the nearest airport shown on an aerial chart was at least three or four miles away from the drag strip upon which he had purported to land; that with the radio he could locate his position within a half to a quarter of a mile but that he did not attempt to do this before attempting to land his plane on the drag strip; that he had already flown over the Gulfport air-

port and had observed it with a ceiling of about 8,000 feet and that he did not see any air traffic in the air over Gulfport or did he see any air traffic on the ground; that the point at which he attempted to land his aircraft is not shown on the aerial charts by which he was navigating his aircraft; that when he struck the power line over the drag strip in attempting to land on the strip, that he had already traversed one-fourth of the length of the strip and that he had never before piloted an aircraft in the Mississippi Gulf Coast area.

The power line was built in 1939 and the drag strip was built in 1957. The lowest wire was 27 feet 4 inches above the drag strip and the highest wire was 27 feet 9 inches above the drag strip; that the equipment of the power company was in conformity with the minimum requirements of the National Electric Safety Code, which requires a clearance of only 22 feet as a minimum.

An experienced aviator, one of the witnesses on behalf of the appellant, testified on cross-examination that no experienced pilot flying at a ceiling of 8,000 feet and visibility of 12 miles at 6:20 p. m. on June 13 would be likely to mistake the drag strip for the airport that was marked on the aerial chart and that an experienced pilot attempting to land in an area where he had never landed an aircraft before would certainly make a complete circle of the area and look it over before attempting to bring the plane down in such an area. He was certain that this would be the reasonable procedure for a student pilot that had had no more experience than this pilot.

The only assignment of error is that the court erred in directing a verdict for the appellee, Mississippi Power Company. We are of the opinion that the appellee owed no duty to the appellant which was violated by it as disclosed by the record in this case.

In the case of La Com v. Pacific Gas & Electric Co., 132 Cal. App. 2d 114, 281 P. 2d 894, 48 A. L. R.

2d 1455, it was held that an electric company was not liable to the operator of an aircraft who collided with electric wires while attempting to land on a nearby airport, which airport had been duly designated as a landing field. The La Com case facts would ordinarily present a stronger case for the appellants than the appellants have established because the aircraft in that case was attempting to land at a regularly and duly designated airport, whereas here the attempted landing took place on a strip which has never been and is not now designated or recognized as an airport. In the La Com case the court further held that the electric company was under no duty to paint with white and orange stripes poles which were already in place when the airport was created, and that even with reference to a designated airport, the electric company was required only to paint such poles as would be erected after the airport was created and the rule of the Federal Aviation Agency promulgated. The court further stated that the poles and wires of the electric company were plainly visible to the pilot, the accident having occurred on May 6 at approximately 6:55 p.m., and that furthermore the failure to have the lines marked was not a contributory cause of the accident. The court further held that the crash occurred solely and alone by reason of the negligence of the pilot. Cf. Strother, et al. v. Pacific Gas & Electric Co., et al., (Calif.), 211 P. 2d 624.

In the case of Rochester Gas & Electric Corp. v. Dunlop (N. Y.), 148 Misc. 849, 266 N. Y. S. 469, the court said: ''Aerial navigation, important as it may be, has no inherent superiority over the landowner where their rights and claims are in actual conflict. * * * Air navigation, important as it is, cannot rightly levy toll upon the legal rights of others for its successful prosecution. * * * To hold that the defendant (in this case the pilot) here is absolved from liability, because he was himself free from negligence, is to hazard all the chim-

neys in the land, as well as livestock on the farms, and even the people in their homes. The other alternative seems by far the more reasonable, namely: Such chance as there may be that a properly equipped and well-handled aeroplane may still crash upon and injure private property shall be borne by him who takes the machine aloft.'' This case may not be exactly in point as to the holding in the present case. It does show the duty which the aviator owes to the public in general.

■■ ■ We hold that the accident to the appellant's aircraft was due to the sole negligence of the pilot in attempting to land in the manner in which he did.

The case is therefore affirmed.

Affirmed.

*Lee, P. J.,* and *Kyle, Gillespie,* and *Jones, JJ.,* concur.