465 So.2d 1270 (1985)
FLORIDA POWER AND LIGHT COMPANY, Appellant,
v.
Glenn V. LIVELY, Sr. and Barbara Lively, His Wife, Appellees.
No. 81-1571.
District Court of Appeal of Florida, Third District.
March 5, 1985.
*1271 Richard E. Hardwick, Coral Gables, Daniels & Hicks and Mark Hicks, Miami, for appellant.
Bartel, Shuford & Dubitsky; Morgan, Lewis & Bockius and Paul J. Levine, Miami, for appellees.
Before SCHWARTZ, C.J., and HENDRY, BARKDULL, HUBBART, NESBITT, BASKIN, PEARSON, FERGUSON and JORGENSON, JJ.

OPINION ON REHEARING EN BANC[1]
BARKDULL, Judge.
This is an appeal by Florida Power and Light Company (FPL) from an adverse jury verdict arising out of the collision of a single engine airplane, while in an emergency situation, with two static lines attached to the top of FPL's electrical transmission towers, located 8.7 miles from Miami International Airport (MIA) and 102 feet from the ground. Prior to trial the parties stipulated that damages were $500,000.00. The only issues submitted to the *1272 jury were liability and comparative negligence.
The negligence claimed against FPL was that it had a duty to place markers on its static lines so as to make them more visible to pilots encountering problems with flight. In other words, FPL should have foreseen that airplanes might encounter trouble in the area of the power lines and be required to fly between the transmission towers. Thus, FPL had a duty to mark the static lines.
On April 28, 1979, Glenn Lively, as pilot, and a passenger, took off from the Tamiami Airport in a 1978 Bellanca Citabria (an acrobatic plane). They flew to North Perry Airport in Broward County for breakfast. Their flight to North Perry was at 800 feet and it took them under the MIA Terminal Control Area (TCA). After breakfast they took off and headed back to Tamiami. They ultimately went west at an altitude of 800 feet and at 130 m.p.h. toward Krome Avenue in northwest Dade County. The plane began slowing down and losing altitude. The speed dropped to 80 m.p.h. and the pilot assessed the situation as a fuel starvation problem. He unscrewed the manual primer and injected fuel directly into the cylinder heads. This allowed him to regain RPMs and a speed of 120 m.p.h. which would have permitted the plane not only to maintain altitude but to climb. When the airplane regained power, Mr. Lively was about a quarter of a mile from the transmission lines and he admitted seeing them. After regaining power, he climbed to about 100 feet and he decided to fly to Krome Avenue and land there. Prior to impact, Mr. Lively saw the transmission towers, which stood about 102 feet high and 1000 feet apart. He also saw the heavy transmission lines which had not yet been pulled tight because the lines were under construction. They were attached 71 feet above the ground, but they hung about 30 or 40 feet from the surface. At the top of the transmission towers were strung two 3/8 inch galvanized steel wires or (nonenergized) static lines which are used to absorb lightning. Mr. Lively stated that he could not see the static lines. Another witness testified that they were sometimes visible. He proceeded toward Krome Avenue and collided with the wires, resulting in the crash. Mr. Lively testified that all flight manuals teach that one must stay clear of transmission poles and assume that there are wires strung between them.[2]
Plaintiff's expert testified that the crash occurred within what is known as the Dade County Airport Zoning Area and the FAA TCA (or approach zones). He testified that because many airplanes fly into MIA and through the area surrounding the airport, "... unusual considerations for safety have to be made." He then concluded that all static wires in the airport approach zones, which range from the airport up to 20 miles out in many directions, should be marked, and in particular the wires involved in this accident, which were 8.7 miles out and 102 feet off of the ground. However, in reaching this conclusion, he testified that he knew of no instance where such markers are used in the State of Florida. He has not seen any markers 8 1/2 miles from an airport in Florida and, out of the many people that fly into the airport zoning area, Mr. Lively is the only one he knows of that has hit a line. The plaintiff's expert also stated that he had no personal experience in installing, inspecting or flying over such markers. Significantly, he conceded that failing to mark the static lines did not violate any FAA regulations. The uncontroverted evidence revealed that at the location of the accident the appropriate regulations permit structures up to 1620 feet high. Such structures need only be marked *1273 if they are in excess of 200 feet. The plaintiff's expert testified that pilots should not fly between towers or poles.
The essential elements of negligence from which liability will flow are duty, breach of duty, legal cause and damage. W. Prosser, Torts § 30 p. 143 (4th ED. 1979). FPL contends that the first three elements are absent in this case.
The term duty has been criticized as a "... shorthand statement of a conclusion, rather than an aid to analysis in itself." Prosser, supra, at p. 325. No universal test has ever been formulated, however one recognized definition of "duty" is the existence of a relationship between individuals which imposes upon one the legal obligation to conform to a standard of reasonable conduct so as to protect the other from foreseeable and unreasonable risks of harm. Prosser, supra, at pp. 143, 324. Whether a duty exists is a question of law for the court. Prosser, supra, at p. 206. The issue of breach of duty is often considered a question for the jury, unless only one reasonable conclusion may be drawn from the facts in evidence. See Rice v. Florida Power and Light Company, 363 So.2d 834 (Fla. 3d DCA 1978). Bayman v. Clearwater Power Co., Inc., 15 Wash. App. 566, 550 P.2d 554 (1976). "If no reasonable duty was abrogated, as a matter of law, no negligence [can] be found." Rice v. Florida Power and Light Company, supra. FPL contends that under the evidence elicited below, there was no duty or breach of duty as a matter of law.
FPL's contentions are supported by authorities which discuss duty in cases involving injuries resulting from the location or placement of power lines. A recent case involving an aircraft which struck a static line is Lea v. Baumann Surgical Supplies, Inc., 321 So.2d 844 (La. App. 1975). There the passenger in a plane was killed when the aircraft struck a 3/8 inch static wire while attempting to land on a privately owned strip. The transmission poles were located 1,191 feet from the runway and they were strung 98.6 feet high. The passenger's wife sued several parties including the power company. As to the power company's negligence, it was contended, inter alia, that it failed to properly mark the wires and supporting structures with markers or lights to make them more visible. The jury found the company negligent. The Louisiana Court of Appeal reversed and said:
"It is elementary tort law that negligence is the breach of a duty of care owed the injured party. If there is no duty to exercise care as to a given plaintiff, defendant's conduct does not amount to negligence and is not actionable."
* * * * * *
"The first inquiry is whether the conduct complained of is a cause in fact of the harm. Secondly, it must be determined whether defendant was under a legal duty imposed to protect against the particular risk involved. The final question is whether defendant breached a duty imposed."
* * * * * *
"Notwithstanding the erection of the wire by LP & L was a cause in fact of the accident, liability does not attach upon LP & L herein for the simple reason there was no duty, statutory or otherwise, resting upon LP & L with respect to either erecting or marking the line. LP & L cannot be negligent in failing to discharge a duty of care which did not exist... .
* * * * * *
We do not believe it could be argued logically that every transmission line, regardless of height and location must be marked, under penalty of liability for all ensuing air accidents. Such a rule, we believe, would be basically nonsensical. Our appreciation of the record impels the inescapable conclusion that erection of this facility did not constitute a hazard to air navigation, albeit the poles and wire extended a maximum of 98.6 and a minimum of 67 feet above the earth at the span in question. As thus constructed, the wire did not constitute a hazard to *1274 any pilot landing at Cora airstrip pursuant to a normal flight pattern and observing basic rules of air safety."
* * * * * *
"We do not deem it negligence to fail to foresee that a pilot will attempt a landing in violation of fundamental principles of safe flying. We find the same reasoning applies with respect to LP & L's failure to mark the line. Since the line was not a hazard to air navigation, we do not deem it negligence to fail to mark its existence."
Another case finding no duty is Gunn v. Edison Sault Electric Co., 24 Mich. App. 43, 179 N.W.2d 680 (1970). There, a seaplane collided with the power company's transmission wires while attempting to land on a river. The wires ran 120 yards over the water at an altitude of 38 feet. The plaintiff alleged that "[t]here were no markers on the poles of the defendant, nor on the power lines." As noted by the Court:
"The question presented to us on appeal is whether the defendant was guilty of common-law negligence in failing to have the line and poles marked with either paint or some type of reflector."
As a predicate to answering this question, the Court observed that the pilot had approached the landing from a different direction than most pilots had ever been known to do. The Court then stated as follows:
"Conversely, the law is complied with when an electric or telephone company or others engaged in the transmission or use of electricity provide such a protection as will safely guard against any contingency that is reasonable to be anticipated. The extent of the duty or standard of care is measured in the terms of foreseeability of injury from the situation created. There is no duty to safeguard against occurrences that cannot be reasonably expected or contemplated. A failure to anticipate and guard against a happening which would not have arisen but for exceptional or unusual circumstances is not negligence, nor does the law require those maintaining power transmission lines to anticipate every possible fortuitous circumstance that might cause injurious contacts with those lines."
In Walker v. Texas Electric Service Co., 499 S.W.2d 20 (Tex.Civ.App. 1973), the power company was charged with negligence in failing to mark a 3/8 inch static line located 500 feet from the runway and 100 to 110 feet from the ground. The plaintiff's aircraft struck the line while attempting to land. A summary judgment was granted for the power company and the plaintiff appealed. In affirming the summary judgment, the court noted that the lines were constructed in compliance with all ordinances and that this was the first accident of its kind which had occurred at the airport. The court concluded that "[i]n the absence of proof that the appellee either knew or should have known of danger there could be no breach of duty and negligence". See also Bayman v. Clearwater Power Co., Inc., supra, which affirmed a summary judgment for the power company finding no breach of duty where an airplane hit a cable. Columbia Helicopters, Inc. v. United States, 314 F. Supp. 946 (D.Or. 1969); Hughes v. Mississippi Power Co., 244 Miss. 326, 141 So.2d 539 (1962).
It is apparent from these authorities that no duty or breach of duty exists as a matter of law where the following elements exist: the height of power lines and their location are in compliance with applicable ordinances and FAA regulations; no notice of prior accidents of a similar kind involving the power lines exists; and the power lines, as constructed, do not create an unreasonable risk of harm. The uncontroverted evidence in this case fits this criteria, and therefore no duty exists as a matter of law. In fact, the evidence in this case is far more compelling than the evidence presented in the cases cited.
The height and location of the static lines were fully in compliance with FAA regulations and the Dade County code. It is undisputed that the FPL lines were located 8.7 miles from the airport (where structures *1275 may be built up to 1620 feet in height), while in Lea v. Baumann Surgical Supplies, Inc., supra, and Walker v. Texas Electric Service Co., supra, they were located at 1191 feet and 500 feet respectively. In addition, plaintiff's expert testified that he knew of no instance where such markers are used in the State of Florida. He also knew of no such markers located 8 1/2 miles from an airport. Further, out of the many people flying in the vicinity of the airport, Mr. Lively is the first and only person he knew of that was injured by a power line. (The fact that the power lines were under construction also establishes lack of notice as to any potential problems which may arise.)
The plaintiff herein was required to be at least 500 feet above the towers or at an altitude in excess of 600 feet while in normal flight.[3] FPL was in conformity with both the F.A.R. and the county aviation ordinance when it erected the towers. They were under 200 feet in height and therefore not required to be lighted per the FAA. In the area in which they were erected, as long as they were under 1610 feet they were within the height limitations of the county ordinance.[4]
It is also significant that the accident in question did not occur during a landing or departure from an airport. Instead, it occurred as a result of a totally unanticipated emergency which arose while Mr. Lively happened to be flying near the lines.
Based upon these facts, it is clear that the only reasonable conclusion which may be reached in this case is that no duty or breach of duty exists. Any other result would require all persons and entities lawfully using their land within the approximately 140 square mile airport zoning area to anticipate every possible type of emergency which might occur involving an airplane and guard against it. Telephone lines, guy wires and even clothes lines would have to be marked in anticipation of a possible emergency situation. This is not the law. One need not "... anticipate and guard against a happening which would not have arisen but for exceptional or unusual circumstances... ." Gunn v. Edison Sault Electric Co., supra. FPL was under no duty to anticipate that an airplane would fly 8.7 miles out into the Everglades, encounter engine trouble, and deliberately fly between its transmission towers in an attempt to land safely.
The plaintiff's theory was that Florida Power and Light was required to anticipate that because of the number of flights in and out of the several airports in the control zone, that one might have an emergency and thereby, in an attempt to make a landing, strike the static lines. As was candidly admitted during oral argument of the case en banc, such a theory would require FPL to mark all its static wires as well as its transmission wires in the entire airport area with visible lighted markers because even those visible during the day would be invisible at night. As reflected by the sectional chart, put into evidence by the plaintiff, this marking would be required in the entire airport approach zone, which extends out some 20 miles from Miami International Airport, and the entire area covered by the county aviation ordinance. This is an area which encompasses some 140 square miles. The sectional chart further shows there are airport terminal areas surrounding eight airports which overlap and encompasses an area in Southeast Florida almost contiguous in length from South Palm Beach County to South of Homestead or an area approximately 65 miles long by 12 miles wide. All of this would be in addition to the existing requirement that if the towers were over 200 feet tall they would have to be lighted. We simply cannot accept such a theory because first, the record shows that no such accident had ever taken place in this control zone, and second the mere possibility of an event is not the same as foreseeability. There must be a probability that something will occur, not a possibility. Crown Liquors of Broward, Inc. v. Evenrud, *1276 436 So.2d 927 (Fla. 2nd DCA 1983); Firestone Tire & Rubber Co., Inc. v. Lippincott, 383 So.2d 1181 (Fla. 5th DCA 1980); Stanage v. Bilbo, 382 So.2d 423 (Fla. 5th DCA 1980); State, Agency of Stephen Boyles v. Simer, 363 So.2d 357 (Fla. 1st DCA 1978); Bryant v. Jax Liquors, 352 So.2d 542 (Fla. 1st DCA 1977). As implied, if not affirmatively appearing in this court's opinion in Speigel v. Southern Bell Telephone & Telegraph Co. and Florida Power & Light Co., supra, wherein no duty was found, it was possible that one of the many automobiles that passed a particular power pole might have a malfunction, leave the roadway and strike the pole, yet it was not negligence to erect the pole because such an event was not probable, notwithstanding the fact that the pole was in close proximity to the roadway.
In Speigel, FPL and Southern Bell were sued for negligence in maintaining a light and telephone pole so near the highway that plaintiff's driver was fatally injured when her automobile collided with the pole. The trial court granted a summary judgment in favor of FP & L and Southern Bell and this Court affirmed, relying upon the following reasoning:
"[A] utility company is under no obligation to guard against extraordinary exigencies created when a vehicle leaves the traveled portion of a roadway out of control. Oram v. New Jersey Bell Telephone Company [132 N.J. Super. 491] 334 A.2d 343 (1975). The uncontradicted evidence in this case clearly shows that the plaintiff vehicle had left the roadway prior to impact with the utility pole involved herein. Summary Final Judgment therefore be and the same hereby is granted in favor of the defendants. .. ."
There is absolutely no rational reason to find that a vehicle leaving the roadway and hitting a utility pole is an extraordinary exigency which is unforeseeable, while finding that it is foreseeable that an airplane crash landing would hit the static line in this case.
We believe that the analysis in Speigel is correct because courts must place limits on foreseeability. Clearly, it is foreseeable in the practical sense that planes and cars will crash or encounter emergencies. However, only acts which are likely to result in injury are compensable. Acts which cause injury but are foreseeable only as remote possibilities, those only slightly probable, are beyond the limit of legal liability. National Airlines, Inc. v. Edwards, 336 So.2d 545 (Fla. 1976).
Under these circumstances, in this case, there is only one reasonable conclusion which may be reached. FPL had no duty, breached no duty and was not the legal cause of injury to Mr. Lively.[5]See Pinkerton-Hays Lumber Co. v. Pope, 127 So.2d 441 (Fla. 1961).
Therefore for the reasons above stated we find that the trial court erred in denying FPL's motion for directed verdict.[6] The final judgment is reversed with directions to enter judgment for the defendant.
Reversed and remanded with directions.
*1277 HUBBART, Judge (dissenting).
By today's decision, the court reaches two results based on separately stated grounds. First, the court withdraws the prior three-judge panel opinion rendered in this cause and grants the defendant FPL's motion for rehearing en banc; the stated ground for reaching this result is that "the panel opinion in effect announce[s] a rule of law which conflict[s] with a rule previously announced by this Court in Speigel v. Southern Bell Telephone & Telegraph Co., 341 So.2d 832 (Fla. 3d DCA 1977)," 465 So.2d at 1271 n. 1, thereby creating a lack of uniformity between two decisions of this court sufficient to invoke our en banc jurisdiction under Fla.R.App.P. 9.331(a).[1]Schreiber v. Chase Federal Savings & Loan Association, 422 So.2d 911, 914-16 (Fla. 3d DCA 1982) (Nesbitt, J., dissenting),[2]aff'd in part, disapproved in part, (Fla. 1984) (case no. 63,017, opinion filed July 26, 1984) [9 F.L.W. 313]. Second, the court reverses the final judgment under review, which was entered below on a jury verdict in favor of the plaintiffs Glenn and Barbara Lively, and remands the cause to the trial court with directions to enter a final judgment in favor of the defendant FPL; the stated ground for reaching this result is that "the trial court erred in denying FPL's motion for directed verdict," 465 So.2d at 1276, (footnote omitted), because as a matter of law "FPL had no duty, breached no duty and was not the legal cause of injury to Mr. Lively." Id.
I must respectfully dissent as to both of these results. I would deny FPL's motions for rehearing and rehearing en banc and let stand the three-judge panel opinion of this court affirming the judgment entered on the jury verdict below. This court, in my view, has no en banc jurisdiction to rehear this cause under Fla.R.App.P. 9.331; and, on the merits, the panel opinion's disposition of this case is, in my judgment, entirely correct.

I
First, I see no rule of law announced in the three-judge panel opinion which remotely conflicts with a rule of law announced in Speigel v. Southern Bell Telephone & Telegraph Co., supra, so as to invoke our extraordinary en banc jurisdiction under Fla.R.App.P. 9.331(a). The panel opinion restates in some detail the applicable rules of law pertaining to the three basic elements of a negligence action in Florida, supported, in turn, by appropriate citations and quotations from Florida case authority. (panel slip opinion at 4-12). By way of contrast, the court's opinion in Speigel is *1278 very abbreviated, states only one rule of law therein and reads in its entirety as follows:
"This is an appeal by plaintiffs from a final summary judgment entered in favor of the defendants in an action wherein the defendants were charged with negligently maintaining a light and telephone pole so near the highway that plaintiffs' driver was fatally injured when her automobile collided with the pole.
In his summary final judgment, the trial judge set forth the following, in pertinent part:
`ORDERED AND ADJUDGED that a utility company is under no obligation to guard against extraordinary exigencies created when a vehicle leaves the traveled portion of roadway out of control. Oram v. New Jersey Bell Telephone Company [132 N.J. Super. 491] 334 A.2d 343 (1975). The uncontradicted evidence in this case clearly shows that the plaintiff vehicle had left the roadway prior to impact with the utility pole involved herein. Summary Final Judgment therefore be and the same hereby is granted in favor of the defendants, and the defendants shall go hence without day.'
After careful consideration of the record on appeal, briefs and arguments of counsel we have concluded that the trial judge was correct in entering the judgment appealed.
Affirmed."
341 So.2d at 833 (emphasis added).
I am, frankly, at a loss to understand how "the panel opinion in effect announce[s] a rule of law which conflict[s] with a rule previously announced by this court in Speigel ...," 465 So.2d at 1271 n. 1 as the court herein concludes. The only rule of law announced in Speigel is that "`a utility company is under no obligation to guard against extraordinary exigencies created when a vehicle leaves the traveled portion of a roadway out of control.'" 341 So.2d at 833. I think this eminently sound rule of law is perfectly consistent and in no way conflicts with any of the rules of law announced in the panel opinion in the instant case. Indeed, the en banc court in its entire opinion fails to cite a single rule of law in the panel opinion which it claims is inconsistent with this rule of law announced in Speigel. Plainly, there is no such rule of law conflict; the court's stated basis for asserting en banc jurisdiction under Fla.R.App.P. 9.331(a) is singularly unpersuasive.
The court does attempt to argue elsewhere in the en banc opinion  unconvincingly, I think  that the results reached by the panel opinion and Speigel are inconsistent because the two cases have basically the same controlling facts and yet reached different results. 465 So.2d at 1276. This in no way, however, represents the announcement of inconsistent rules of law as claimed by the court for assuming en banc jurisdiction herein. It represents instead an entirely separate basis for asserting en banc jurisdiction, one not relied on by the en banc court, namely, "`the application of a rule of law to produce a different result in a case which involves substantially the same controlling facts as a prior case disposed of by this [c]ourt.'" Schreiber v. Chase Federal Savings & Loan Association, supra at 915 (Nesbitt, J., dissenting) (majority opinion of court on en banc issue) (quoting Nielsen v. City of Sarasota, 117 So.2d 731, 734 (Fla. 1960)).[3] It therefore follows that, in this respect, the court's analysis of Speigel is not relevant to its asserted basis for assuming en banc jurisdiction under Fla.R.App.P. 9.331(a). Moreover, as will be demonstrated later, the results reached by Speigel and the panel opinion are entirely consistent with one another and therefore no basis exists for asserting en banc jurisdiction on an "inconsistent results" ground even if such ground was relied on by the court, which it is not.
The court's stated basis, then, for asserting en banc jurisdiction on rehearing under *1279 Fla.R.App.P. 9.331(a) is entirely unwarranted. FPL's motion for rehearing en banc should therefore be denied.

II
Second, as to the merits, I adhere to the panel opinion's analysis that the defendant FPL had a duty as a matter of law to exercise due care in the maintenance of its power and static lines so as to avoid creating unreasonable risks of harm to the general public, including the plaintiff Glenn Lively, and that the fact pattern presented by this case created a jury question both as to whether the defendant FPL breached that duty, and whether that breach of duty was the proximate cause of the plaintiff Glenn Lively's injuries. The en banc court, however, reaches a contrary result based on a wholly different analysis; I am entirely unpersuaded by the court's reasoning and authority.

A
The first element of a negligence action in Florida is, as the court concedes, 465 So.2d at 1272-1273, the existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others, including the plaintiff (panel slip opinion at 4, 9 n. 2 and authorities collected). The court, however, concludes that no such duty exists in this case as a matter of law. I disagree. I adhere to the panel opinion's analysis that defendant FPL had a legal duty to maintain its power and static lines in such a manner as to avoid creating unreasonable risks of harm to members of the general public, including the plaintiff.
It is well-settled in Florida that an electric power company has a legal duty to "do all that human care, vigilance and foresight can reasonably do, consistent with the practical operation of its plant, to protect those who use its electricity," Escambia County Electric Light & Power Co. v. Sutherland, 61 Fla. 167, 55 So. 83, 91 (1911) (emphasis added), or who as a member of the general public may come in contact with its publicly exposed power lines, including trespassers, Florida Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911, 917 (1938); see Annot., 30 A.L.R.3d 777, 779, 781 (1970), "but it is not an insurer against all possible accidents." Rice v. Florida Power & Light Co., 363 So.2d 834, 838 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 460 (Fla. 1979). By the overwhelming weight of authority, this legal duty extends to the maintenance of power company lines, such as guy wires, which result in non-electricity-related injuries. Annot., 55 A.L.R.2d 178, 179-80 (1957) and cases collected; see Postal Telegraph Cable Co. v. Herrington, 221 Fed. 226 (5th Cir.1915); Putnam Lumber Co. v. Berry, 146 Fla. 595, 2 So.2d 133 (1941).
Properly viewed, the above-stated legal duty imposed on electric power companies is not a duty to exercise extraordinary care, but only a duty to exercise reasonable care under the circumstances so as to not create unreasonable risks of harm to members of the general public  although what constitutes sufficient conduct to satisfy that duty varies according to the circumstances presented. Richmond v. Florida Power & Light Co., 58 So.2d 687 (Fla. 1952). For example, in maintaining power lines which carry a high voltage of electricity, greater precautions need to be taken, in order to satisfy the duty of exercising reasonable care, than in maintaining power lines which carry little or no voltage of electricity, such as the power lines used to ground lightning in the instant case. Indeed, it is well-settled that a reasonable person will necessarily take different precautions to satisfy his duty of exercising reasonable care, depending on the degree of danger which the circumstances present. W. Prosser, Law of Torts § 34, at 180-82 (4th ed. 1971).
The court's effort to distinguish the above line of Florida cases on the ground that "[t]his case does not involve an injury occasioned by energized electrical transmission wires, the maintenance of which puts a high duty of care on the electrical supplier," 465 So.2d at 1276 n. 5, is, therefore, unpersuasive. Whether its power lines are *1280 electrically charged or not, FPL has a duty to the general public to maintain its lines in such a way so as to not create unreasonable risks of harm to others. Indeed, the court, elsewhere in its opinion, concedes as much when it states, as the controlling rule of law in this case, that a power company is not liable in negligence for an aircraft collision with its power lines, as here, where, inter alia, the lines, as constructed, "do not create an unreasonable risk of harm." 465 So.2d at 1274. Plainly, such a stated criteria implicitly recognizes that a power company [such as FPL] has a legal duty to the general public, including the plaintiff herein, to maintain its power lines so as not to create unreasonable risks of harm to others in the first instance, else such a showing would be entirely unnecessary.
This aforesaid legal duty has been imposed on electric power companies for obvious reasons. Electric power companies are utilities and occupy a special relationship with the general public. These companies are granted regulated monopoly status and are allowed to build and maintain their poles, power lines, guy wires, transformers, static wires and other such apparatus, on public thoroughfares and private property. All these structures pose some risk of harm to others, particularly in the case of high-voltage power lines. As a matter of common sense and simple fairness, it is thought proper that power companies be required to exercise not extraordinary care, but reasonable care under the circumstances in the maintenance of their power lines and other publicly exposed apparatus, so as not to create unreasonable risks of harm to the general public  without at the same time making the companies insurers against all possible accidents. The fact that the power lines, as here, are not electrically charged cannot, in my view, change this result. FPL plainly had a duty under Florida law to avoid creating unreasonable risks of harm to others, including the plaintiff.

B
The second element of a negligence action in Florida, as the court also concedes, is the so-called breach of duty element, that is, the failure on the part of the defendant to perform the legal duty imposed upon him for the protection of others, including the plaintiff (panel slip opinion at 4, 9 n. 2 and authorities collected). As discussed with supporting authority in the panel opinion, whether this element has been proven in a given case is generally a jury question and is inappropriate for resolution on a directed verdict (panel slip opinion at 7-8 and authorities collected). The court, however, concludes that this element was not proven in this case as a matter of law because the accident and injury herein were entirely unforeseeable. I disagree. I adhere to the panel opinion's analysis that there was sufficient evidence of FPL's negligence presented below on the breach of duty element to sustain a jury finding that this element had been proven. In a word, the evidence presented below sustains a jury finding that the defendant FPL created an unreasonable risk of harm to others, including the plaintiff herein, when it failed to mark its non-visible static wires into which the said plaintiff collided, and that the subject accident and the resultant injuries herein were entirely foreseeable.

1
First, the static lines in this case were strung between two transmission towers 102 feet in the air, located in a wide-open expanse of uninhabited land, not in the Everglades as the court states, but in the westerly approach zone to the Miami International Airport. This area daily experiences an exceptional amount of overhead air traffic and is an area on which a prudent person could make an emergency landing if required by necessity. According to maps introduced in evidence and expert testimony at trial, this aircraft collision took place over a wide-open, uninhabited expanse of land in the westerly approach zone to the Miami International Airport, eight and seven-tenths miles from the airport, between Krome Avenue and the Turnpike Extension, about one and one-half miles east of Krome Avenue. This westerly approach zone experiences an unusual *1281 amount of overhead air traffic proceeding to and from the airport on a daily basis. The record reflects that in 1979 there were 381,628 takeoffs and landings at the Miami International Airport involving some nineteen million passengers, more than half of which passed through the westerly approach zone where this accident occurred. In addition, this approach zone is but a few miles from the Opa Locka Airport which the record shows is one of the ten busiest airports in the United States and inferentially contributes to the heavy air traffic in the general area. It seems to me entirely foreseeable, and not a remote possibility as the court concludes, that one of the many overhead airplanes which daily fly over these lines might experience engine difficulty and be forced to make an emergency landing in the area. The fact that no one had, prior to the accident, attempted such a landing  something the court herein heavily relies upon  hardly changes this result, else there would never be any liability for an accident which had not frequently occurred in the same manner, a result which has long been rejected by the courts of this state. See Stark v. Holtzclaw, 90 Fla. 207, 213, 105 So. 330, 332-33 (1925); K-Mart Enterprises of Florida v. Keller, 439 So.2d 283, 286 (Fla. 3d DCA 1983), pet. for review denied, 450 So.2d 487 (Fla. 1984); Crislip v. Holland, 401 So.2d 1115, 1117 (Fla. 4th DCA 1981), pet. for review denied sub. nom, City of Fort Pierce v. Crislip, 411 So.2d 380 (Fla. 1981); Broome v. Budget Rent-A-Car of Jax, Inc., 182 So.2d 26, 29-30 (Fla. 1st DCA 1966).
Second, the static lines, which sliced through the plaintiff Glenn Lively's cockpit as he was negotiating his emergency landing in this case, were so thin as not to be visible to the naked eye. The plaintiff Glenn Lively so testified (Tr.60); this testimony was, in turn, corroborated by plaintiff's expert witness Oscar Willingham, who subsequently flew over these lines and described their visibility as "nil." (Tr.225). These static lines were not marked and were not otherwise known to the plaintiff. The court throughout its opinion, in my view, fails to take this salient factor into account in its foreseeability discussion; this silence, I think speaks volumes as to the faulty nature of the court's analysis on this issue.
Third, the static lines were strung in trap-like fashion over clearly visible, heavy transmission lines attached seventy-one feet above the ground, but which sagged thirty to forty feet above the surface. An appearance was therefore given to the unwary pilot attempting to negotiate an emergency landing in the area that it was safe, when it was not, to fly between the two towers but above the visible wires in negotiating his landing. Although ordinarily a pilot should avoid flying between transmission towers, the evidence is clear that the plaintiff Lively was forced by unavoidable necessity to land in the area when his engine unexpectedly stalled. Indeed, he had only twenty seconds to react between the stalling of his engine and the collision with the static wires; he was therefore plainly forced to take chances he would not take under normal circumstances by flying between the two transmission towers. It seems less than reasonable to fault him, as the court herein appears to do,[4] for taking this chance after having less than twenty seconds to think it over in order to save his life and the life of his passenger. Small wonder, then, that the jury found Mr. Lively not guilty of any comparative negligence in this case. Moreover, to the extent that the court upsets the jury verdict in favor of the plaintiff on the basis that he was at fault in this case, I think the court has impermissibly reweighed and re-evaluated the evidence in this case and has substituted its opinion for that of the jury. Plainly, there was sufficient evidence to support the jury's finding of no comparative negligence in this case. See Cook v. Lewis K. Liggett Co., 127 Fla. 369, 374-75, 173 So. 159, 161 (1937); Mosca v. Middleton, 342 So.2d 986, 987 (Fla. 3d DCA), cert. denied, 354 So.2d 983 (Fla. 1977); see also Helman *1282 v. Seaboard Coast Line Railroad, 349 So.2d 1187, 1189 (Fla. 1977).
Finally, there was expert testimony adduced below that, because the accident did happen in the aforesaid westerly airport approach zone to the Miami International Airport with its daily overhead air traffic, the defendant FPL breached its duty of reasonable care to the plaintiff by not placing aerial ball markers costing $40 each on its otherwise non-visible static lines situated in this approach zone. The markers would make the wires visible to pilots making emergency landings in the aforesaid zone due to unavoidable necessity such as that experienced by the plaintiff herein.
Oscar Willingham, a professional safety engineer and former Navy pilot, testified at trial as an expert witness for the plaintiff as follows:
"Q. Recognizing, Mr. Willingham, the place where this accident happened, do you have an opinion as to whether or not Florida Power and Light's failure to mark its static lines with aerial markers constituted a departure from reasonable safety engineering standards?
A. Yes.
Q. What is that opinion?
A. I think they should have marked them in that particular area, in the airport approach zone.
Q. What are the reasons for your opinion?
A. Well, my reasons were based upon, particularly, the heavy traffic area in the airport approach zones, the exposure of life that happens right in that area, a tremendous amount of aircraft traffic and a great number of passengers that fly over that area all the time, and those airplanes are in various stages of operational effect and some are in trouble, and some have one degree or another of failure.
They have emergencies at the airport every day, airplane loads of people, so in that particular area in the airport approach zones, I think that Florida Power and Light should mark those wires, yes."
(Tr.224-25).
"Q. Are you saying, Mr. Willingham, that aerial markers should be installed on all power lines in Dade County?
A. No, no, that would be a terrible expense. I don't think that at all.
I think that in the airport approach zones where there is so much traffic in there, so much maneuvering aircraft at this height, and so many people are involved and so many hazards to these people there, yes, I think they should be marked."
(Tr.266).
I appreciate the fact, as noted by the court, that the defendant FPL was not in violation of FAA regulations in failing to mark its static lines in this case, but that hardly compels a finding of no negligence on its part. The FAA regulations herein attempt to assure the safe passage of aircraft flying in normal flight patterns; they make no effort to announce standards to protect aircraft making emergency landings as in the instant case. Plainly, the tort law of Florida is authorized to fill this gap and establish standards of due care in this respect. As for the fact that no marker had been seen by the plaintiff's expert on utility wires eight and one-half miles from an airport in Florida, such fact hardly precludes a jury finding of negligence where the failure to place such markers, as here, otherwise creates an unreasonable risk of harm to others, else a person's negligence could be insulated from liability based on a showing of other persons' similar negligence.
All of the above factors, it seems to me, constitutes a more than ample basis for the jury to conclude, as it did, that the defendant FPL breached its duty of due care to the plaintiff Glenn Lively by failing to mark its non-visible static wires in this case and in arranging its visible transmission wires in trap-like fashion below these static wires  thereby creating an unreasonable risk of harm to low-flying aircraft negotiating an emergency landing in the area. *1283 These facts further demonstrate the foreseeability of the subject accident and the resultant injuries sustained herein.

2
A brief word now seems in order as to the essence of the court's contrary analysis on the breach of duty element. It is, in my view, a fundamentally flawed analysis.
First, the court in its opinion reads the existing case authority on this subject throughout the country to stand for the proposition that "no duty or breach of duty exists as a matter of law where the following elements exist: the height of the power lines and their location are in compliance with applicable ordinances and FAA regulations; no notice of prior accidents of a similar kind involving the power lines exists; and the power lines, as constructed, do not create an unreasonable risk of harm;" the court then concludes that "[t]he uncontroverted evidence in this case fits this criteria, and therefore no duty exists as a matter of law." 465 So.2d at 1274. I do not agree with the court's reading of the existing cases on this subject and regard the statement of law which it gleans therefrom to be entirely inaccurate; I would adhere to the panel's extensive analysis of the existing caselaw on this subject. But even as stated by the court, the statement of law announced and the result reached will doubtless be of small consolation to the defendant FPL. Although it escapes liability in this case, FPL will not be able to do so in any future cases of this nature because it can no longer claim, as here, "no notice of prior accidents of similar kind involving the power lines," an essential prerequisite under the court's opinion to escaping liability as a matter of law for accidents of this nature. It would therefore behoove FPL to mark all of its non-visible power and static lines in the area where this accident occurred and in similar areas or risk a jury finding of negligence for failing to do so. I frankly fail to understand how this whole case can turn, as it does, on the stated legal criteria set out in the court's opinion, especially the lack of notice of prior accidents of a similar nature. It strikes me that these criteria are artificial in nature and the results which they produce entirely arbitrary.
Second, the court is much impressed with what it considers to be a parade of horribles which would follow if the judgment below were affirmed. Indeed, this seems to be the heart of the court's opinion herein. The court states:
"Based upon these facts, it is clear that the only reasonable conclusion which may be reached in this case is that no duty or breach of duty exists. Any other result would require all persons and entities lawfully using their land within the approximately 140 square mile airport zoning area to anticipate every possible type of emergency which might occur involving an airplane and guard against it. Telephone lines, guy wires and even clothes lines would have to be marked in anticipation of a possible emergency situation. This is not the law.
465 So.2d at 1275.
With all due respect, the court exaggerates. Utility companies and other land owners are not obliged, as the court suggests, to mark all their telephone lines, guy wires and clothes lines in the entire airport zoning area if this judgment is affirmed. We deal here with a very limited case, namely, with utility wires which are strung between transmission towers 102 feet in the air, which wires are not visible to the naked eye and are arranged in a trap-like fashion over other visible wires; that factor alone eliminates most of the lines and wires the court refers to and would surely never include a clothes line. Also we deal with wires located in a wide-open expanse of land in the uninhabited portion of the airport zoning area of Dade County where an airplane could be anticipated to make a safe emergency landing; that factor also eliminates most urban areas within the airport zoning area where safe emergency plane landings are virtually impossible. In sum, then, the panel's opinion affirming the judgment below did not impose an impossible burden on anyone; indeed, neither does *1284 the court's en banc opinion, which, as I read it, requires the same result  not in this case, of course  but in all future cases of like nature involving FPL.
Third, the court argues that the case of Speigel v. Southern Bell Telephone & Telegraph Co., supra, compels a reversal in this case. I cannot agree. In Speigel, the plaintiff drove his car off a roadway into a plainly visible telephone pole which was not negligently situated in any way. We affirmed a summary judgment for the defendant telephone company as plainly the company had created, as a matter of law, no unreasonable risk of harm to the plaintiff; there was utterly no negligence shown in the case. By way of contrast, the facts of the instant case are strikingly different as the static lines herein were not visible to the naked eye and were strung from high transmission towers above trap-like visible wires; in sum, there is a negligence showing in this case unlike in Speigel. The plaintiff could see the telephone pole in Speigel and the pole itself was not negligently situated; the plaintiff could not see the static wires in the instant case and the wires were negligently situated in trap-like fashion above other visible wires.
This crucial distinction, which the court herein overlooks throughout its opinion, also distinguishes Rice v. Florida Power & Light Co., 363 So.2d 834 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 460 (Fla. 1979), which is relied on by FPL on rehearing. In Rice, the plaintiff decedent guided his wired model airplane into plainly visible overhead utility wires on an open field at the University of Miami. We affirmed a summary judgment for the defendant utility company, as we did in Speigel, because as a matter of law the utility company had created no unreasonable risk of harm to the plaintiff in maintaining these plainly visible wires. Indeed, in Rice, we specifically stated that a different result might have obtained if the exposed wires had not been plainly visible. 363 So.2d at 839. That is precisely what we have in this case which speaks volumes as to why the jury verdict herein should be affirmed.
Finally, the court concludes as follows on the foreseeability portion of the breach of duty issue:
"We believe that the analysis in Speigel is correct because courts must place limits on foreseeability. Clearly, it is foreseeable in the practical sense that planes and cars will crash or encounter emergencies. However, only acts which are likely to result in injury are compensable. Acts which cause injury but are foreseeable only as remote possibilities, those only slightly probable, are beyond the limit of legal liability. National Airlines, Inc. v. Edwards, 336 So.2d 545 (Fla. 1976)."
465 So.2d at 1276.
I confess that I do not understand what the court means here. The court appears to concede by this passage that Mr. Lively's emergency crash in this case was foreseeable "in the practical sense" but seems to deny him any relief because "only acts which are likely to result in injury are compensable." Surely, an emergency collision of an aircraft with a static power line, as in the instant case, is likely to result in injury and therefore should be compensable. But, no, apparently not, because as the court states, "[a]cts which cause injury but are foreseeable only as remote possibilities, those only slightly probable, are beyond the limit of legal liability." I confess I have never read a case which supports such a proposition of law; the National Airlines case cited by the court plainly offers no such support. If an act is reasonably foreseeable, liability for negligence would seem to attach; if an act is only a remote possibility, it is not reasonably foreseeable and negligence liability would not seem to attach at all. I do not see how an act can be "reasonably foreseeable" as a "remote possibility;" the two concepts are mutually exclusive and are entirely contradictory. Moreover, if an act is probable, even "slightly probable" as the court says this accident is, a jury is free to find that the act is reasonably foreseeable and negligence liability may attach.
*1285 In sum, then, the court leaves this case in considerable confusion on the foreseeability issue, tilting, I should say  although unwittingly  in favor of sustaining the jury verdict herein. Plainly, even the court seems led to the inevitable conclusion that the accident in this case was foreseeable in the practical sense, and therefore in the legal sense as well.

C
Third, I think the proximate cause element of a negligence action in Florida was plainly established below as the panel opinion demonstrates. Indeed, the court in its en banc opinion fails to explain in any way why this element was not established below. But for FPL's negligence in failing to mark the static wires in this case, the accident herein would never have occurred. Moreover, for the reasons developed previously, the accident herein was entirely foreseeable.

III
For all of the above reasons, then, I must respectfully dissent from the court's en banc decision herein. I would deny the defendant FPL's motion for rehearing en banc and let stand the three-judge panel opinion rendered herein.
BASKIN, J., concurs.
DANIEL S. PEARSON, J., concurs in part II.
NOTES
[1] After the rendition of a panel opinion of this Court, an appropriate petition for rehearing and rehearing en banc was filed by the appellee, the rehearing en banc having secured the necessary votes of the active members of this Court, the panel opinion was withdrawn and the matter was set for additional oral argument, which resulted in this opinion. The basis for the rehearing en banc was that the panel opinion in effect announced a rule of law which conflicted with a rule previously announced by this Court in Speigel v. Southern Bell Telephone & Telegraph Co., 341 So.2d 832 (Fla. 3d DCA 1977).
[2] In fact, the sectional chart introduced into evidence as the plaintiff's Exhibit No. 2 contains the following language:

"CAUTION, This chart is primarily designed for VFR navigational purposes and does not purport to indicate the presence of all telephone, telegraph and power transmission lines, terrain or obstacles which may be encountered below reasonable and safe altitudes."
* * * * * *
"CAUTION, Guy wires may extend outward from structures"
[3] § 91.79(c) Federal Aviation Regulations.
[4] §§ 33-334 & 33-336 Dade County Code.
[5] This case does not involve an injury occasioned by energized electrical transmission wires, the maintenance of which puts a high duty of care on the electric supplier. Therefore the following authorities are not applicable to this case. See Richmond v. Florida Power & Light Co., 58 So.2d 687 (Fla. 1952); Florida Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911 (1938); Escambia County Light & Power Co. v. Sutherland, 61 Fla. 167, 55 So. 83 (1911); See also Annot., 30 A.L.R.3rd 779-781 (1970).

This case does not involve electrical wires maintained in such a fashion as to constitute a trap to aircraft flying under normal conditions in accordance with applicable federal aviation regulations. Therefore the following authorities are not applicable to this case. McCauley v. United States, 470 F.2d 137 (9th Cir.1972); El Paso Natural Gas Co. v. United States, 343 F.2d 145 (9th Cir.1965); Arizona Public Service Co. v. Brittain, 107 Ariz. 278, 486 P.2d 176 (1971); Weber v. Southwestern Bell Telephone Co., 209 Kan. 273, 497 P.2d 118 (1972); Reminga v. United States, 448 F. Supp. 445 (W.D.Mich. 1978); Yoffee v. Pennsylvania Power & Light Co., 385 Pa. 520, 123 A.2d 636 (1956); Mills v. Orcas Power & Light Co., 56 Wash.2d 807, 355 P.2d 781 (1960).
[6] Because of this disposition we do not reach the second point urged for reversal.
[1] "En banc hearings and rehearings shall not be ordered unless necessary to maintain uniformity in the court's decisions." This en banc proceeding was heard prior to the recent amendment to Fla.R.App.P. 9.331(a), which expanded our en banc jurisdiction to include cases of "exceptional importance," and, accordingly, this amendment has no bearing on our jurisdiction to entertain this case on an en banc basis.
[2] Judge Nesbitt's dissenting opinion in Schreiber is the majority opinion of this court on the issue of standards for en banc review in this district; the Florida Supreme Court's subsequent decision on this issue does not appear to upset the standards as the Court therein holds that the district courts of appeal are free to adopt their own standards on intra-district decisional uniformity under the en banc rule. Judge Nesbitt's opinion in Schreiber, in turn, articulates our standards for en banc jurisdiction as follows:

"`While conceivably there may be other circumstances, the principal situations justifying the invocation of our jurisdiction to review decisions of Courts of Appeal because of alleged conflicts are, (1) the announcement of a rule of law which conflicts with a rule previously announced by this Court, or (2) the application of a rule of law to produce a different result in a case which involves substantially the same controlling facts as a prior case disposed of by this Court. Under the first situation the facts are immaterial. It is the announcement of a conflicting rule of law that conveys jurisdiction to us to review the decision of the Court of Appeal. Under the second situation the controlling facts become vital and our jurisdiction may be asserted only where the Court of Appeal has applied a recognized rule of law to reach a conflicting conclusion in a case involving substantially the same controlling facts as were involved in allegedly conflicting prior decisions of this Court. Florida Power & Light Co. v. Bell, 113 So.2d 697 [Fla. 1959].'"
422 So.2d at 915.
[3] See supra note 2.
[4] The court does not directly accuse the plaintiff Glenn Lively of being at fault in the subject accident, but infers as much throughout its opinion.