58 So.2d 687 (1952)
RICHMOND
v.
FLORIDA POWER & LIGHT CO.
Supreme Court of Florida, Special Division A.
May 9, 1952.
Martin Lemlich, Miami, for appellant.
E.F.P. Brigham, Thomas C. Britton, Miami, and Phillip Goldman, Tallahassee, for appellee.
*688 THOMAS, Justice.
Summary judgment was entered in favor of the appellee, and this appeal followed.
The utility company owned and maintained, along a street in the residential district of Hialeah, a line of wooden poles supporting uninsulated wires that transmitted electric current of high voltage. The appellant stood in his yard, a hundred feet away, and tested a "Gibson Girl" emergency air rescue radio transmitter consisting partly of a box kite and a long copper wire, which served as a kite cord. In the process appellant's and appellee's wires came into contact, and the appellant was injured.
The appellant does not contend that the company should have insulated its wires, but that it should have taken the precaution of posting warning signs or "placing * * * guards around such wires" or both.
We don't recede from the definition of the duty of manufacturers of electricity, announced in Escambia County Electric Light and Power Company v. Sutherland, 61 Fla. 167, 55 So. 83, 91, to "do all that human care, vigilance, and foresight can reasonably do, consistent with the practical operation of its plant to protect those who use its electricity." But we are unwilling to enlarge the duty so that such a company would be required to establish warning signs and guards to protect a person who wishes to fly a kite under the circumstances shown in this record.
We enumerate these circumstances. Appellant admitted he knew that contact of the wire on his kite with a wire carrying electricity would cause shock. With commendable candor he said he "honestly didn't give the wires [transmission] much of a thought." From this statement and the other evidence, such as photographs of the scene it is clear that the electric wires were in plain sight. Flying his kite in an urban vicinity, appellant should have assumed, or at least suspected, that the wires in his unobstructed view were conducting electricity to the residences in the neighborhood. A man of appellant's experience and obvious intelligence  he was formerly a pilot in the Army Transport Command, was presently operating a plane between San Juan and New York, had been schooled in the use of the apparatus he was testing  would be expected to anticipate danger in flying a kite with a metal kite string in a place where the wire attached to the kite might touch wires charged with electricity. The appellant conceded that if he had "thought" he would not have flown the kite over the appellee's wires.
We see no need to digest and collate cases dealing with safeguards, against damage from electricity, such as warning notices, guards and insulation, for the simple reason that the need for them, and the responsibility for their absence, depends largely on the facts of the individual cases.
At the particular place where the mishap under study occurred there would seem to be no need for insulation, unless it were required for every foot of wire, anywhere, through which electrical energy passed. The same is true of guards; and as for signs, where would they be placed, at what intervals, in what directions would they face, and for what distance would they be legible?
The inherent danger of electrically energized wires is well known to all except those of tenderest age, but as we have found in the quoted opinion, the need for successful distribution of so necessary a commodity cannot be defeated by requiring that every conceivable protection be afforded wherever wires carrying it may go, so that anyone who chances to come near may be saved from injury in anything he decides to do, however unpredictable. That would be one extreme. An illustration of the other would be the maintenance of exposed wires low to the ground where children customarily gathered.
Between the two would arise the situations where responsibility, or none, would be the question. From our study of the cases we are convinced that no set rule can be defined; that each must be determined according to the facts peculiar to it.
We repeat that in the circumstances of this one the judge properly found *689 there was no liability. The basic facts were so clear and undisputed that they formed a question of law which the judge was empowered to decide on motion for summary judgment.
Affirmed.
SEBRING, C.J., and CHAPMAN and MATHEWS, JJ., concur.