357 So.2d 420 (1978)
Gerald RICCIO and Maura Riccio, Appellants,
v.
ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Appellee.
No. 77-462.
District Court of Appeal of Florida, Third District.
March 14, 1978.
Rehearing Denied May 2, 1978.
*421 Wolfson, Appel & Maram and Anthony J. Brown and Christopher W. Warner, Miami, for appellants.
Weissenborn, Burr & Hyman, Miami, for appellee.
Before HAVERFIELD, C.J., and HENDRY and NATHAN, JJ.
PER CURIAM.
Appellants/defendants appeal from a final judgment rendered in favor of appellee/plaintiff pursuant to a directed verdict in an action for a declaratory decree. By directing a verdict, the trial judge determined that appellee's liability for uninsured motorist coverage, under a policy of insurance issued to appellants in April of 1972, was limited to $10,000/$20,000.
Briefly stated, the facts reveal that on August 31, 1972, appellants' daughter was involved in an automobile accident in which she received fatal injuries. As a result of the accident, a claim arose against the insurance company of the driver of the other vehicle. This third party claim was settled for $10,000.00, the full amount of the available coverage.
Subsequent to the above settlement, a claim was presented against appellee under the uninsured motorist provision of appellants' policy. This claim was rejected by appellee upon the grounds that, pursuant to the applicable statute in force at the time of the issuance of the policy, Section 627.727(1), Florida Statutes (effective January 1, 1972), appellants were not automatically entitled to uninsured motorist coverage in an amount equal to their liability limits, which was $100,000/$300,000. Rather, appellee argued, appellants were covered in only the minimum amount allowed by the law ($10,000/$20,000) and, as that minimum amount was satisfied by appellant's third party claim, no further recovery was possible.[1]
Appellants, on the other hand, contended that in April of 1972, appellant Gerald Riccio, the deceased's father, had requested from appellee's agent certain changes in his automobile insurance policy. These changes included, inter alia, adding his newly licensed teenage daughter to the policy and extending coverage to the legal limits. Prior to this request, Mr. Riccio's insurance provided coverage in the following amounts: $100,000/$300,000 liability and $10,000/$20,000 uninsured motorist. Pursuant to former Section 627.727(1), appellants argued that "full coverage," as requested, meant uninsured motorist coverage in an amount equal to liability coverage.
Upon notification of appellee's refusal to extend uninsured motorist coverage to $100,000/$300,000, appellants, on June 25, *422 1975, filed a demand for arbitration. Prior to a hearing on the matter, appellee, in doubt as to its rights and obligations under its issued policy, filed for a declaratory decree. The complaint contained the same basic contention that is set forth above, to-wit: that Section 627.727, Florida Statutes, effective January 1, 1972, did not automatically entitle an insured to uninsured motorist coverage in an amount equal to the limits of liability coverage in the policy. In addition, appellee also alleged that no request to increase uninsured motorist coverage to equal liability limits was ever made by appellant.
Appellants answered the complaint and a trial before a jury was subsequently held. At the conclusion of appellants' case, pursuant to motion, the trial judge directed a verdict in appellee's favor. Final judgment was entered upon the verdict and this appeal follows.
Appellants raise two points on appeal. First, appellants contend that a directed verdict was inappropriate in that viewing the evidence and favorable inference taken therefrom, the jury could have found that Gerald Riccio had requested "full coverage" from appellee's agent and was, in fact, told that both he and his daughter were so covered, i.e., $100,000/$300,000 liability and uninsured motorist coverage.
Appellants' second contention challenges the directed verdict insofar as former Section 627.727 requires an insured named in the policy to specifically reject uninsured motorist coverage. Appellants argue that by virtue of the fact that the deceased, as a named insured in the policy, did not reject uninsured motorist coverage, she was thus entitled to the full coverage available under the law  $100,000/$300,000.
After carefully reviewing the record, briefs and arguments of counsel, it is our opinion that the final judgment, predicated upon the directed verdict, must be reversed.
Directed verdicts should not be entered if the evidence is conflicting and permits different, reasonable inferences. Sparks v. Ober, 216 So.2d 483 (Fla. 3d DCA 1968). Upon reviewing a directed verdict, an appellate court is required to consider the testimony adduced in the cause in the light most favorable to the party opposing the motion, disregarding conflicts and indulging every reasonable intendment deducible from the evidence in favor of the non-moving party. Paikin v. Beach Cabs, Inc., 187 So.2d 93 (Fla. 3d DCA 1966). Once done, the question then becomes whether there was any evidence upon which a jury could have lawfully found a verdict for appellants. Martin v. Thompson, 124 So.2d 744 (Fla. 3d DCA 1960).
Based upon the above criteria, the record is replete with testimony concerning the contents of various conversations held between Isaac Dorf, agent for appellee, and appellant Gerald Riccio. In sum and substance, the conversations dealt with appellant's request to add his daughter to his existing policy of insurance and, at the same time, increase his coverage to the extent that he was "fully covered." In addition, the record reflects a subsequent query to Dorf's office concerning an increased premium billing wherein appellant was reassured by employees of Dorf that the increase related to greater coverage.
With the above in mind, there seems little doubt that a jury could have concluded that appellant sought, and was led to believe, that he was "fully covered." Pursuant to the applicable statute governing the issuance of the policy, which is set forth below, "full coverage" would mean $100,000/$300,000 uninsured motorist. Section 627.727, Florida Statutes (effective January 1, 1972) reads, in pertinent part, as follows:
"(1) No automobile liability insurance, covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in § 324.021(7), and in an amount up to 100 percent of the liability insurance purchased by the named insured for bodily *423 injury, under provisions filed with and approved by the department, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage; ..."
Appellee, however, contends that, pursuant to the above statute, "full coverage" under the law is any amount of uninsured motorist coverage between the financial responsibility limits ($10,000/$20,000) and the bodily injury liability coverage. Garcia v. Allstate Insurance Company, 327 So.2d 784 (Fla. 3d DCA 1976), cert. den. 345 So.2d 422 (Fla. 1977); but see Lumbermen's Mutual Casualty Company v. Beaver, 355 So.2d 441 (Fla. 4th DCA 1978), opinion filed February 14, 1978.[2]
Notwithstanding appellee's contention, the record reflects that appellee's own agent, Isaac Dorf, testified that on April 28, 1972, he was writing policies of insurance to automobile owners in the amounts of $100,000/$300,000 liability and $100,000/$300,000 uninsured motorist. In addition, Dorf testified to the effect that full coverage amounted to the above matched amounts, i.e., $100,000/$300,000 liability and uninsured motorist.
Accordingly, even assuming that, pursuant to Garcia, supra, coverage in the amount of $10,000/$20,000 uninsured motorist was "legal," a factual question was nevertheless raised by virtue of appellant requesting "full coverage" from appellee and believing that "full coverage," i.e. $100,000/$300,000 uninsured motorist, was afforded to him and his daughter. Such a factual question would not properly be disposed of by a directed verdict.
Having favorably ruled upon appellants' first point, we need not address ourselves to the second contention. Nevertheless, in the interest of justice, we feel duty bound to offer the following remarks. The record placed before us neither proves nor disproves appellants' contention concerning the deceased's failure to reject uninsured motorist coverage, as required by Section 627.727, Florida Statutes; Aetna Casualty & Surety Company v. Green, 327 So.2d 65 (Fla. 1st DCA 1976); Weathers v. Mission Insurance Company, 258 So.2d 277 (Fla. 3d DCA 1972). Assuming that this question is again raised upon remand, the litigants may wish to explore fully an issue that quite possibly would be dispositive of the controversy.
Accordingly, for the reasons stated above, the final judgment is reversed and remanded for new trial.
Reversed and remanded.
NOTES
[1] The insurance policy issued by appellee provides that "uninsured motorist" coverage includes protection from "underinsured" vehicles.
[2] Effective October 1, 1973, Section 627.727 was amended to provide for "uninsured motorist" coverage in amounts "not less than the limits of bodily injury liability insurance purchased by the named insured" unless rejected by the insured.