501 So.2d 1339 (1987)
Marta LOPEZ, As Personal Representative of the Estate of Lucio Pablo Lopez, Deceased, Appellant,
v.
FLORIDA POWER & LIGHT Company, a Florida Corporation, and Asplundh Tree Expert Company, a Pennsylvania Corporation, Appellees.
No. 85-2883.
District Court of Appeal of Florida, Third District.
January 20, 1987.
Rehearing Denied March 3, 1987.
*1340 Horton, Perse & Ginsberg and Edward A. Perse, Adolfo del Castillo, for appellant.
Steel, Hector & Davis and Norman A. Coll and Samuel J. Dubbin, for appellee Florida Power & Light Company.
George, Hartz & Lundeen and Mitchell L. Lundeen and Caroline C. Emery, for appellee Asplundh Tree Expert Company.
Before SCHWARTZ, C.J., and Daniel S. PEARSON and JORGENSON, JJ.
PER CURIAM.
This is an appeal by Marta Lopez from an order of the trial court entering final judgment for Florida Power & Light Company [FPL] and Asplundh Tree Expert Company [Asplundh] in accordance with FPL's and Asplundh's motions for a directed verdict. Following a careful review of the record, briefs, and arguments of counsel, we conclude that a reasonable jury could not have returned a verdict for Lopez on the basis of the evidence, and, therefore, we affirm the trial court's order setting aside the verdict and entering judgment for FPL and Asplundh.
This wrongful death action arose from the electrocution of the plaintiff Lopez's husband, Lucio Pablo Lopez. Mr. Lopez ascended a six-foot aluminum ladder to climb into the limbs of an avocado tree in his backyard. Mr. Lopez had devised a metal pole sixteen feet long with a wire loop and catcher net at one end for the purpose of picking fruit. With this sixteen-foot metal picker of his own invention, Mr. Lopez successfully picked two large avocados from the tree. While reaching for a third weighty avocado with his homemade picker, Mr. Lopez made contact with an overhead electrical power line and was electrocuted. Marta Lopez commenced a wrongful death action against FPL and Asplundh.
Lopez alleged that FPL had breached its duty to trim the Lopezes' avocado tree properly so that the branches did not touch the overhead electrical power lines and its duty to warn Mr. Lopez adequately of the dangers of contacting an electrical line. Lopez claimed that Asplundh, FPL's tree-trimming contractor, had failed to trim the Lopezes' tree sufficiently. According to Lopez's complaint, these breaches of duty had proximately caused Mr. Lopez's death.
At trial, FPL established that it maintained a regular tree-trimming schedule to ensure that branches and wires never intersected. Both FPL and Asplundh provided evidence of the fact that the Lopezes' tree had been trimmed by Asplundh only four months prior to the fatal accident. Numerous witnesses testified that there was a three- to five-foot clearance between the tree and the wires at the time the incident occurred. Several witnesses viewed the tree after the accident, while Mr. Lopez's metal pole was still entangled in the wire. The last three-pound avocado caught by Mr. Lopez in the net of the pole prior to his accident caused the wire to slope downward into the tree. Those witnesses testified about the proximity of the wires to the tree but were unable to state what the clearance distance was prior to the accident. Marta Lopez admitted that the tree and the wires had not been touching at the time Mr. Lopez climbed into the tree.
Plaintiff's expert witness, Dr. Agustin Recio, offered at least three explanations as to how the accident occurred: (1) Mr. Lopez's pole made contact with the wire; (2) the overhead wires energized the tree; or (3) the pole pulled the tree branches and energized the tree. Dr. Recio, an electrical engineer, could not state definitively which scenario had transpired and revealed that there were "many ways" in which the accident could have occurred.
FPL introduced into evidence bilingual bill stuffers which contained warnings of the dangers of making contact with electrical wires while engaged in such activities *1341 as kite flying, antenna installation, fruit picking, and tree pruning. By Lopez's own account, her husband was a "well-educated" man who had managed the household accounts and paid all the bills.
Both FPL and Asplundh moved for a directed verdict at the close of Lopez's case and at the close of all the evidence. The court reserved ruling on these motions and submitted the case to the jury which returned a verdict for Lopez.
FPL and Asplundh renewed their motions for a directed verdict. The court issued an eleven-page, written order detailing its reasons for setting aside the verdict and entering judgment for FPL and Asplundh. The court properly framed its order in the alternative so that if the directed verdict were reversed on appeal a new trial would be granted. See Ligman v. Tardiff, 466 So.2d 1125 (Fla. 3d DCA) (proper procedure for trial judge to rule on motion notwithstanding verdict as well as alternative motion for new trial), rev. denied, 478 So.2d 54 (Fla. 1985).
Reviewing the evidence and its inferences in the light most favorable to Lopez, the nonmoving party in relation to the directed verdict, Reams v. Vaughn, 435 So.2d 879, 880 (Fla. 5th DCA 1983), we agree with the trial court that FPL and Asplundh are entitled to judgment as a matter of law. "Directed verdicts should not be entered if the evidence is conflicting and permits different, reasonable inferences." Riccio v. Allstate Ins. Co., 357 So.2d 420, 422 (Fla. 3d DCA 1978). In the instant case, no view of the evidence could support the jury's verdict for Lopez. Although Lopez accurately alleged the basic components of a negligence action  the defendants' duty, the breach of that duty, and the resulting harm to the decedent, Stahl v. Metropolitan Dade County, 438 So.2d 14, 17 (Fla. 3d DCA 1983)  Lopez failed to meet her burden at trial to produce evidence supporting these allegations.
It is clear from this record that FPL and Asplundh breached no duty to Mr. Lopez. An electric company is under an obligation to "do all that human care, vigilance, and foresight can reasonably do ... to protect those who use its electricity," but it is not an insurer against all possible accidents. Escambia County Elec. Light & Power Co. v. Sutherland, 61 Fla. 167, 55 So. 83, 91 (Fla. 1911). Lopez's own expert, Dr. Recio, was unable to find a violation by FPL of any applicable code, regulation, or standard of care.[1] The uncontroverted evidence attests to the existence of three to five feet of clearance between the tree and the overhead electrical wire.
Lopez was similarly unable to prove by competent evidence that FPL breached its duty to warn Mr. Lopez of the danger of working near electrical wires with a metal implement. Lopez failed to show that Mr. Lopez, a sixty-six-year-old microfilm operator, was not aware of the danger. The hazards of electrical wires should have been manifest to him. The Florida supreme court observed in Richmond v. Florida Power & Light, 58 So.2d 687, 688 (Fla. 1952):
The inherent danger of electrically energized wires is well known to all except those of tenderest age, but ... the need for successful distribution of so necessary a commodity cannot be defeated by requiring that every conceivable protection be afforded wherever wires carrying it may go, so that anyone who chances to come near may be saved from injury in anything he decides to do, however unpredictable.
In Richmond the court affirmed a summary judgment in favor of FPL, finding no breach of duty in FPL's failure to post warning signs around uninsulated transmission wires. The Richmond plaintiff suffered injuries when part of a radio transmitter he was testing intersected with *1342 overhead power wires. The wires were clearly visible, and the accident occurred in the plaintiff's own neighborhood. Here, as in Richmond, the accident occurred in the victim's own residential area where the overhead wires were readily apparent. See Rice v. Florida Power & Light, 363 So.2d 834 (Fla. 3d DCA 1978) (adult decedent electrocuted when model airplane touched uninsulated power lines; where clear view of wires existed, and power lines placed in accordance with accepted engineering practices, electric company not liable as a matter of law), cert. denied, 373 So.2d 460 (Fla. 1979); see also Florida Power & Light v. Lively, 465 So.2d 1270, 1276 (Fla. 3d DCA) (en banc) (pilot hit transmission wires when forced to make emergency landing; "FPL had no duty, breached no duty and was not the legal cause of injury to Mr. Lively"), rev. denied, 476 So.2d 674 (Fla. 1985). But cf. Hardware Mut. Cas. Co. v. Tampa Elec. Co., 60 So.2d 179 (Fla. 1952) (electric company not excused from liability as a matter of law where power wires partially camouflaged by foliage of citrus grove and electric company had not inspected wires or trimmed trees in eight years).
The record also reveals a deficiency regarding the causation element. An act or omission of FPL and Asplundh cannot be regarded as the proximate cause of Mr. Lopez's death unless his death could have been reasonably foreseen. See generally 21 Fla.Jur.2d Energy § 53 (1980). "Acts which cause injury but are foreseeable only as remote possibilities, those only slightly probable, are beyond the limit of legal liability." Lively, 465 So.2d at 1276. Moreover, a court may make proximate cause determinations as a matter of law where reasonable people could not differ. Hoffman v. Bennett, 477 So.2d 43, 44 (Fla. 3d DCA 1985).
"In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury." Gooding v. University Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla. 1984). In Gooding the Florida supreme court held that the plaintiff in a medical malpractice action had to show that the injury more likely than not resulted from the defendant's negligence in order to satisfy the causation requirement. Gooding involved a wrongful death action brought by the widow of a patient against a hospital. The plaintiff claimed that the failure of the hospital to quickly diagnose and treat the decedent's abdominal aneurysm before he went into cardiac arrest constituted negligence. At trial, plaintiff's expert medical witness failed to testify that immediate diagnosis and treatment more likely than not would have saved the decedent's life. The court held that on this record a jury could not reasonably find that the hospital's negligence probably caused decedent's injuries. The court quoted Prosser with approval:
A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
Id. at 1018 (quoting Prosser, Law of Torts § 41 (4th ed. 1971)).
Comparison of the standard articulated by the Florida supreme court in Gooding with the record of the instant case supports the correctness of the directed verdict for FPL and Asplundh. Here Lopez, through her expert witness, presented an array of theories from which the jury could select a premise for liability. Merely proving that an accident occurred does not establish a prima facie case of negligence. Abrams v. Nolan Brown Cadillac Co., 228 So.2d 131, 132 (Fla. 3d DCA 1969), cert. denied, 237 So.2d 536 (Fla. 1970). The "more likely than not" requirement regarding a plaintiff's burden of proof in a negligence action has not been satisfied by Lopez.
We agree with the trial court that Lopez failed to prove the allegations in her pleadings and that there was no evidence from which a reasonable jury could have concluded that negligence on the part of FPL and Asplundh caused the death of Mr. Lopez. Accordingly, we affirm the trial *1343 court's order setting aside the jury verdict and entering judgment for FPL and Asplundh.
Affirmed.
DANIEL S. PEARSON and JORGENSON, JJ., concur.
SCHWARTZ, Chief Judge (dissenting).
I believe that, in considering the height of the tree, the location of the avocados, and the anticipatable use of a lengthy pole to extract the fruit, the jury could, as it did, properly find that the power company negligently maintained its uninsulated wire in a position of foreseeable danger, too close to the tree. See Hardware Mutual Casualty Co. v. Tampa Electric Co., 60 So.2d 179 (Fla. 1952); Norris v. City of Miami, 367 So.2d 1038 (Fla. 3d DCA 1979), and authorities cited. I therefore dissent.
NOTES
[1] Although Lopez emphasizes in her brief FPL's internal standard B-6A which recommends a clearance of eight feet, we are not impressed with the significance of this guideline. Lopez has not demonstrated that the accident would not have occurred if the eight-foot clearance had existed, given Mr. Lopez's ascent into the heights of the tree and his use of his sixteen-foot metal pole.