RAMIREZ, J.
The Estate of Leosbel Marimon, plaintiff below, appeals a final summary judgment entered in favor of the two defendants, a landlord and an electric utility company, based on Leosbel Marimon’s wrongful death from electrocution. Because there are genuine issues of material fact, we reverse as to both defendants.
Marimon was a seventeen-year-old boy who was recruited by an elderly neighbor, Juan Martinez, to pick fruit from residential yards around their neighborhood. While Martinez would gather fruit from the ground, Marimon would climb the trees to forage from the higher branches. Sometime prior to the date of the accident, Martinez knocked on Antoine St. Victor’s door and spoke with Gladys Gracia, St. Victor’s girlfriend, who authorized Martinez to pick avocados from the property.
On December 17, 1994, Martinez returned to St. Victor’s home with Marimon, a fourteen-foot extension ladder and two aluminum poles. While Martinez was gathering fruit from the ground, Marimon climbed the ladder. Suddenly, Marimon fell from the tree. Martinez did not actually see what precipitated the fall, but it appeared that the pole came in contact with a live electrical wire or with a branch that was touching a wire.
The various individuals who visited the scene immediately after the accident gave conflicting testimony. Martinez testified that the power lines were not visible from beneath the tree, although they were discernible “going in and out of the trees.” He also stated that he warned Marimon about the presence and danger of the wires. Detective Anthony Magrino, the lead investigator for the Metro-Dade Police Department, testified to the same lack of visibility. The Florida Power & Light investigator testified that the power lines were visible from the rear of the back yard and from the front of St. Victor’s house. Detective Thomas Charles, another Metro-Dade officer, agreed that the lines were visible if you looked for them.
There was also conflicting testimony and other evidence on whether the power lines were surrounded by the tree branches or whether the branches rose above or touched the topmost high voltage power line. According to Martinez and Detective Magrino, a portion of the tree extended into the power lines. Detective Charles also testified that the tree limbs were growing into the wires. FPL offered testimony that there was a clearance between the high voltage line and the closest tree branch, but did not specify the size of the clearance. The trees on St. Victor’s property had been trimmed in 1992, two years before the accident.
The parties disputed the exact manner in which Marimon was electrocuted. One of the plaintiffs experts, Dr. William Mazer, opined that the pole came into contact with an overhanging tree branch that was touching the power line. He based his opinion on the shape and position of the burn marks on the pole, and the presence of charred tree branches that appeared to have been burned by the heat of the electric current going through them. Another of the plaintiffs experts, Michael Audie, testified that, in his opinion, FPL was negligent in its operation and maintenance of its overhead distribution power lines. He based his opinion on FPL’s failure to maintain the trees and vegetation away from its power line; its failure to inspect the power line; the power line’s proximity to the trees; and its failure to comply with the intent of the safety standards in the National Electrical Safety Code.
The Estate sued FPL and St. Victor for wrongful death, alleging they were both at fault. The Estate alleged St. Victor was *890 liable because Marimon was an invitee on the property and St. Victor did not keep his property reasonably safe; the tree had been allowed to grow up to the power lines, thus obstructing the view of the lines by the invitee up in the tree to pick fruit.
On review, we must consider the evidence in the light most favorable to the nonmoving party and must draw all competing inferences in favor of the nonmov-ing party. Cole Taylor Bank v. Shannon, 772 So.2d 546, 550 (Fla. 1st DCA 2000).
As to St. Victor, appellee has argued on appeal that when Marimon entered into the property, he was an uninvited licensee. See Lukancich v. City of Tampa, 583 So.2d 1070, 1072 (Fla. 2d DCA 1991) (quoting Post v. Lunney, 261 So.2d 146 (Fla.1972)). On the other hand, appellant argued that Marimon was an invited licensee and invitee. Such a classification is significant because the status of the entrant is pertinent to the duty of care owed by the landowner. See Wood v. Camp, 284 So.2d 691, 696 (Fla.1973); Barrio v. City of Miami Beach, 698 So.2d 1241, 1243 (Fla. 8d DCA 1997).
“A public invitee is a licensee on the premises by invitation, either express or reasonably implied, of the owner or controller of the property.” Barrio, 698 So.2d at 1243. An uninvited licensee is a person who comes upon the premises solely for his or her own convenience without invitation either expressed or reasonably implied under the circumstances. Id. On the record before us, it is undisputed that Martinez was invited by Gladys Gracia to pick avocados at any time he wished. Thus, Martinez and Marimon were invitees onto the property and it was error to grant summary judgment in favor of the landowner, St. Victor.
The Estate contended FPL was negligent in failing to keep the foliage away from its power lines and having a live high-voltage line close enough to a tree that a fruit picker might be electrocuted. We reverse the summary judgment entered in FPL’s favor because the conflicting affidavits raise genuine issues of material fact as to the conditions which caused Marimon’s death. As Chief Judge Schwartz recently recognized in Pacheco v. Florida Power & Light Co., 784 So.2d 1159 (Fla. 3d DCA 2001), “the danger of coming in contact with an electrified line-by whatever means-falls squarely within the ‘zone of risk’, and ... it does not matter-for summary judgment (or directed verdict) purposes-that FPL perhaps could not foresee the exact manner in which the accident occurred.”
Marimon’s possible comparative negligence does not totally absolve FPL of liability if it did not properly maintain its lines. His behavior was clearly foreseeable and not so far out of the realm of imagination as to break the chain of causation, if the jury finds negligence on FPL’s part. In Stahl v. Metropolitan Dade County, 438 So.2d 14, 21 (Fla. 3d DCA 1983), we stated that the question is whether the plaintiffs injury, “given actual causation, was a foreseeable consequence of the danger created by the defendant’s negligent act or omission. Here the courts deal with fairness and policy considerations, either stated or unstated, so as to relieve defendants in appropriate cases of liability for highly unusual, extraordinary, or bizarre consequences.” In fact, in Lopez v. Florida Power & Light Co., 501 So.2d 1339 (Fla. 3d DCA 1987), the decedent was electrocuted after ascending a six-foot ladder to collect avocados with a sixteen-foot metal fruit picker of his own invention. We distinguish the favorable outcome to FPL in Lopez because the tree there had been trimmed only four months prior to the accident and the uncontrovert- *891 ed evidence showed the existence of three to five feet of clearance between the tree and the overhead electrical wire. See also Jones v. Florida Power & Light Co., 552 So.2d 284 (Fla. 4th DCA 1989). The fact that it may be difficult for the plaintiff to prevail on the merits does not mean that summary judgment is proper.
Reversed and remanded.