# Third District Court of Appeal

## State of Florida

Opinion filed July 25, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2279
Lower Tribunal No. 16-10776
_____

## Nelson Martinez, Sr. and Maria Martinez, etc.,

Appellants,

vs.

## Taurus International Manufacturing, Inc., et al.,

Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Bailey & Glasser, and Patricia M. Kipnis (Cherry Hill, New Jersey); Morris Haynes Wheeles Knowles & Nelson, and Matthew G. Garmon (Birmingham, Alabama); Leesfield Scolaro, P.A., and Thomas Scolaro and Justin B. Shapiro, for appellants.

Weinberg Wheeler Hudgins Gunn & Dial, LLC, and Gary J. Toman (Atlanta, Georgia), Lawrence E. Burkhalter and Alexander Heydemann; Smith, Gambrell & Russell, LLP, and Dana G. Bradford, II and James H. Cummings (Jacksonville), for appellees.

Before EMAS, SCALES and LUCK, JJ.

SCALES, J.

Appellants, plaintiffs below, Nelson Martinez, Sr. and Maria Martinez are the parents of Nelson Martinez, Jr. ("Nelson") and are the co-personal representatives of Nelson's estate, which is also a co-appellant. They seek review of a final summary judgment that concluded, as a matter of law, that defendants, Taurus International Manufacturing, Inc. and Taurus Holdings, Inc. (together, "Taurus")[1] are immune from appellants' wrongful death action by virtue of 15 U.S.C. § 7903(5)(A), the Protection of Lawful Commerce in Arms Act ("the Act"). We reverse the trial court's summary judgment because genuine issues of material fact exist as to whether appellants' lawsuit is a "qualified civil liability action" that would trigger the Act's immunity provision.

**I. Relevant Facts and Procedural Background**

A. Introduction

In February of 2014, twenty-one-year-old Nelson purchased a Taurus .45 caliber model PT24/7 pistol from a pawn shop in Hialeah, Florida. Nelson lived in an efficiency apartment with his sister and her husband, and late in the night of May 1, 2014, Nelson took the pistol into the apartment's bathroom and locked the

---

[1] Three defendants are named in the Complaint: (i) Forjas Taurus, S.A., a Brazilian gun manufacturer; (ii) Taurus Holdings, Inc., an American subsidiary of Forjas Taurus; and (iii) Taurus International Manufacturing, Inc., another American subsidiary of Forjas Taurus. While not entirely clear from the record, it appears that service was not obtained as to Forjas Taurus.

door. The pistol discharged and Nelson died as a result of a gunshot wound to his head, the bullet having entered through his left eye.

While both the Hialeah Police Department and the Miami-Dade Medical Examiner concluded that Nelson committed suicide, Nelson's parents and his estate brought the instant lawsuit against Taurus alleging that a pistol defect caused Nelson's death.

B. Relevant Background Facts

When Nelson purchased the pistol in February of 2014, he was required, pursuant to 18 U.S.C. § 922, to complete, under penalty of perjury, ATF Form 4473 entitled "Firearms Transaction Record Part I – Over-the-Counter." A question on this form asked whether Nelson was a user of marijuana (and other drugs). He responded "no." The record reflects, though, that Nelson had a history of alcohol and marijuana use, including an arrest for possession of marijuana in 2011. In December of 2013, two months before his purchase of the pistol, Nelson admitted marijuana use to his primary care physician (this admission appears on the "history" portion of an intake form). In depositions, his family members admitted to Nelson's periodic marijuana use.

The Medical Examiner's toxicology report indicates the presence of apparently unprescribed controlled substances of the Benzodiazepine class

3

(Alprazolem, Diazepam and Nordiazepam), as well as alcohol, in Nelson's system at the time of his death.

C. The Instant Lawsuit

Appellants filed the instant lawsuit in April of 2016. In their operative complaint, appellants allege that, because of a defective design, the pistol had no effective safety device to prevent an unintended discharge. Specifically, appellants allege that Nelson's pistol had a "drop-fire" defect, meaning that when the pistol was dropped from the height of its ordinary use, the pistol would discharge, and that Taurus did not warn Nelson of this alleged defect.

Taurus moved for summary judgment pursuant to a provision of the Act that provides immunity from civil liability for gun manufacturers and sellers for incidents arising out of the criminal use or other unlawful misuse of a gun. In granting Taurus's motion for summary judgment, the trial court held that the Act immunized Taurus from liability because Nelson purchased the pistol under false pretenses and continued to possess the pistol while taking illegal drugs. This appeal ensued.

**II. Analysis[2]**

A. The Relevant Provisions of the Act

---

[2] We review *de novo* a trial court's summary judgment. Perez-Gurri Corp. v. McLeod, 238 So. 3d 347, 349 (Fla. 3d DCA 2017).

4

In 2005, Congress adopted the Act to, among other things, insulate gun manufacturers from civil liability for "harm caused by those who criminally or unlawfully use firearm products . . . that function as designed and intended." 15 U.S.C. § 7901(a)(5). To effectuate this purpose, the Act prohibits any "qualified civil liability action" from being "brought in any Federal or State court." 15 U.S.C. § 7902(a).

The Act defines a "qualified civil liability action" as "a civil action or proceeding . . . brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . resulting from the criminal or unlawful misuse of a qualified product by the person or a third party . . . ." 15 U.S.C. § 7903(5)(A). The Act defines "unlawful misuse" as "conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product." 15 U.S.C. § 7903(9).

Congress exempted six classes of lawsuits from the definition of a "qualified civil liability action." 15 U.S.C. § 7903(5)(A)(i)-(vi). Potentially pertinent to the instant case is the exemption in subsection (v), which exempts from the Act's grant of immunity those civil actions:

> resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage . . . .

15 U.S.C. § 7903(5)(A)(v) (the "Defect Exception").

B. <u>Taurus's Summary Judgment Burden</u>

Under this statutory framework, in order for Taurus to receive immunity under the Act, Taurus must establish that (i) appellants' lawsuit constitutes a "qualified civil liability action," and (ii) if the lawsuit does qualify as such an action, none of the statutorily prescribed exemptions are applicable.

Of course, for the trial court to make an immunity determination at the summary judgment stage, Taurus must establish the absence of any genuine issue of material fact as to each of these elements. <u>Copeland v. Fla. New Invs. Corp.</u>, 905 So. 2d 979, 980 (Fla. 2005). For our purposes, if we find that a disputed issue of fact exists regarding whether appellants' lawsuit is a "qualified civil liability action," we need not reach the issue of whether one of the Act's exemptions is applicable. <u>See</u> <u>Morales v. Hialeah Hous. Auth.</u>, 149 So. 3d 699, 699 (Fla. 3d DCA 2014).

C. <u>The Trial Court's Summary Judgment for Taurus</u>

In granting summary judgment for Taurus, the trial court determined, as a matter of law, both that: (i) appellants' lawsuit was a "qualified civil liability action," and (ii) the Defect Exception was inapplicable. We focus on the trial court's determination that appellants' lawsuit is a "qualified civil liability action," i.e., that appellants' lawsuit seeks damages for "conduct that violates a statute,

6

ordinance or regulation as it relates to the use of a qualified product."[3] 18 U.S.C. § 7903(9).

The trial court's conclusion in this regard is premised upon two distinct factual findings incorporated into the trial court's order: (1) that Nelson's purchase of the pistol – after Nelson had denied drug use on his federal application form – was a "criminal or unlawful misuse" of the pistol in violation of 18 U.S.C. § 922(a)(6), and (2) Nelson's continued ownership and possession of the pistol after purchase constituted "criminal or unlawful misuse" of the pistol presumably in violation of 18 U.S.C. 922(g)(3).[4] We address each of these conclusions, and Taurus's arguments supporting them, in turn.

_____

[3] The trial court also summarily concluded that the Defect Exception was inapplicable, determining that the "sole proximate cause" of Nelson's damages was Nelson's "purchase, ownership and continuing possession of the Subject Pistol under false pretenses when he was legally prohibited from the same by virtue of his drug use." Because we find the summary judgment record contains genuine issues of disputed fact as to the threshold issue of whether appellants' lawsuit constituted a "qualified civil liability action," we need not, and therefore do not, reach the trial court's conclusion that the Defect Exception is inapplicable.

[4] While the trial court's order does not expressly identify the "statute, ordinance or regulation" violated either by Nelson's purchase of the pistol or Nelson's continued post-purchase possession and ownership of the pistol, the trial court most certainly concluded summarily that both Nelson's purchase and his post-purchase possession of the pistol were unlawful. These conclusions form the critical portion of the trial court's determination that appellants' lawsuit is a "qualified civil liability action." Taurus identifies 18 U.S.C. § 922(a)(6) and 18 U.S.C. §922(g)(3), respectively, as the specific statutes Nelson allegedly violated by his purchase of the pistol and his post-purchase possession and ownership of the pistol.

*1. Nelson's Purchase of the Pistol*

With regard to Taurus's first contention (i.e., that Nelson purchased the pistol in violation of law), Taurus cites to 18 U.S.C. § 922 which: (i) requires all handgun purchasers to answer, under oath, certain specific questions, any one of which may be disqualifying if answered falsely, see 18 U.S.C. § 922 (a)(6); (ii) authorizes ATF to promulgate ATF Form 4473 to effectuate such disclosures; and (iii) further makes it illegal for any person to purchase a firearm when that person is an unlawful user of a controlled substance, see 18 U.S.C. § 922(g)(3). Indeed, when Nelson purchased the firearm, he was asked in question 11(e) of ATF Form 4473: "Are you an unlawful user of, or addicted to, marijuana or any depressive, stimulant, narcotic, or any other controlled substance?" The trial court concluded that Nelson's answer "no" to this question constituted perjury and therefore, as a matter of law, appellants' lawsuit is a "qualified civil liability action" because it seeks damages for Nelson's "unlawful misuse" of the pistol.

While the record certainly contains circumstantial evidence that tends to support Taurus's argument that Nelson committed perjury by answering "no" to this question,[5] the record also contains evidence from which a finder of fact could

_____

[5] The record contains a Medical Examiner's report tracing Nelson's history of drug use. It is bolstered by later testimony of family members that they had knowledge of Nelson's marijuana use. The evidence indicates a pattern of drug use leading up to Nelson's purchase of the pistol, while there is an absence of evidence that his drug use had stopped. The toxicology report from the night he died – three months

8

conclude that, at the time Nelson purchased the pistol, he was not an unlawful user of any controlled substance.[6]    While the term "unlawful user of a controlled substance" is not specifically defined in 18 U.S.C. § 922(g)(3), federal courts have interpreted the term to mean regular and ongoing use of a controlled substance during the same time period as the firearm possession.  See, e.g., United States v. Edmonds, 348 F. 3d 950, 953-54 (11th Cir. 2003). We are unable to conclude that Taurus has established the nonexistence of any material fact as to whether, at the time Nelson purchased the pistol, Nelson was a regular and ongoing user of a controlled substance.

*2. Nelson's Continued Possession of the Pistol*

Taurus also argues, and the trial court also concluded, that, after his purchase of the pistol, Nelson's continued possession of the pistol constituted an ongoing violation of 18 U.S.C. 922(g)(3) because Nelson allegedly consumed illegal drugs during this period. Again, while the assembled facts at the summary

---

after the purchase of the pistol – indicates three apparently unprescribed Benzodiazepine- class drugs in his system.

[6] The record evidence of Nelson's marijuana use pre-dates his February 2014 purchase of the pistol. Nelson's drug-use admissions during treatment at a psychiatric facility occurred between 2006 and 2008. His arrest for possession occurred in 2011. His admission of *past* marijuana use on a medical form occurred in December of 2013. In deposition testimony, Nelson's sister maintained that Nelson was not a "user" and that his marijuana use was "sporadic" and "wasn't often." Further, the use of apparently unprescribed Benzodiazepines found in Nelson's system from the night he died are not traced back to the time period when he purchased the pistol.

judgment stage plainly demonstrate that Nelson used illegal drugs *prior* to his February 2014 purchase of the pistol, the summary judgment record does not conclusively establish that Nelson was an unlawful drug user *after* the purchase of the pistol. Although the toxicology report indicates that unprescribed controlled substances were found in Nelson's system at the time of his death, there is no evidence in the record regarding when these drugs were ingested or how long they remain in one's system. See Estate of Marimon v. Fla. Power & Light Co., 787 So. 2d 887, 890 (Fla. 3d DCA 2001)("On review, we must consider the evidence in the light most favorable to the nonmoving party and must draw all competing inferences in favor of the nonmoving party."). Additionally, given Nelson's sister's deposition testimony that Nelson's use of drugs was "sporadic" and "wasn't often," a genuine issue of material fact exists as to whether Nelson was an "unlawful user" of controlled substances – that is, whether Nelson was a regular and ongoing user of controlled substances – while Nelson possessed the firearm. Edmonds, 348 F. 3d. at 953. Such disputed facts preclude summary judgment.

### III. Conclusion

In sum, based on our *de novo* review of the summary judgment evidence, we are unable to conclude, as a matter of law, that Nelson acquired the subject pistol in violation of a statute or that he continued to possess the pistol in violation of a statute. Therefore, without reaching the issue of whether such violations of statute

10

would constitute the requisite "unlawful misuse" of a firearm so as to characterize the instant lawsuit as a "qualified civil liability action," we are compelled to reverse the trial court's conclusion that appellants' lawsuit constitutes such an action.    Having found that a genuine issue of material fact exists as to whether the instant action is a "qualified civil liability action" for the purposes of the Act, we need not, and therefore do not, reach the issue of whether the Defect Exception of 15 U.S.C. § 7903(5)(A)(v) is applicable.

Reversed and remanded with instructions.